In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2896

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LISA W. CORRY,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 98-167-CR-01-B/F--Sarah Evans Barker, Chief Judge.

Argued January 10, 2000--Decided March 15, 2000

Before FLAUM, MANION, and EVANS, Circuit Judges.

EVANS, Circuit Judge.  Lisa Corry appeals her
sentence, contending that the district judge was
wrong to conclude that a lack of personal gain
from the crime could not be the basis of a
downward departure.

Corry entered a guilty plea to a charge of bank
fraud in violation of 18 U.S.C. sec. 1344. The
charge grew out of her employment as the
controller of an Indianapolis, Indiana, business,
Taurus Foods, at which she made a salary of
$56,000 per year. The company was started, owned,
and operated by her father and his partner.
Before Ms. Corry got in hot water, Taurus was
experiencing serious financial problems.

Taurus had a loan agreement with Bank One
Wisconsin under which the bank provided a line of
credit based on and secured by Taurus' accounts
receivable and inventory. In order to establish
the line of credit, Taurus had to submit a form
titled "Collateral Report and Advance Request" to
Bank One offices in Milwaukee, Wisconsin. The
form was for reporting accounts receivable and
inventory and thus dictated the amount of credit
available--the more value in the
receivables/inventory, the greater the line of
credit for Taurus. Corry was responsible for
filling out the form and sending it to the bank;
she was the one who signed it, indicating that

the information it contained was true, complete, and accurate. We are now considering this case because, in an unsuccessful attempt to keep the company afloat, Corry submitted forms with inflated figures, all of which ended up in a loss to the bank of at least $900,000.

The district judge, Sarah Evans Barker, determined at sentencing that Corry's adjusted offense level was 16 under the guidelines, sec.2F1.1, based on a stipulated loss to the bank of between $850,000 and $1,500,000. Corry argued for several downward departures. As relevant to this appeal, she claimed entitlement to downward departures based on her claims that she did not experience personal gain from the fraud and that the amount of the loss overstated the seriousness of the offense. The judge, it is clear, carefully considered these arguments and granted a 2-level downward departure because in her view the amount of the loss overstated the seriousness of Corry's criminal conduct. The judge denied other downward departure requests, particularly the one based on her claim that she didn't personally profit from her fraud, and that action is the reason for her appeal.

Corry's claim is that Judge Barker determined that considering the request was precluded by United States v. Seacott, 15 F.3d 1380 (7th Cir. 1994). The problem with Seacott, as Corry perceives it, is that the decision preceded Koon v. United States, 518 U.S. 81 (1996), which set out the standards and procedures for consideration of a request for a downward departure. Corry argues that under Koon her request should have been considered, even if not necessarily granted.

Koon clarified the analysis of downward departures. It made clear that downward departures are reviewed for an abuse of discretion; errors of law are by definition abuses of discretion. Koon also set up a framework for looking to the merits of a departure:

If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. Cf. ibid. If a factor is unmentioned in the

Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," ibid., decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent." 1995 USSG ch. 1, pt. A, p. 6.

At 95-96. As relevant here, the issue under Koon would be whether a lack of personal gain takes the case out of the heartland of sec.2F1.1. Judge Barker did not explicitly analyze Corry's situation in the precise terms set out in Koon. But we do not believe she either committed an error of law or abused her discretion in rejecting Corry's claims.

First, it must be noted that while Seacott preceded Koon, its analysis of highly similar facts to those here is consistent with the "heartland" approach set out in Koon. Seacott was a loan officer for a lending institution. He authorized loans to Newton Nichols, the owner of the Glass Bar tavern in Gas City, Indiana. The Glass Bar was in financial straits and Nichols was trying to sell it but needed some money to tide him over. Seacott could not authorize loans directly to Nichols so he personally lent him money and then authorized loans to other persons, knowing that they would funnel the money to Nichols. The money was used as operating capital for the Glass Bar and also to repay a $1,400 personal loan Seacott previously made to Nichols. Unlike Corry, Seacott convinced the district judge that he was entitled to a downward departure because he did not personally benefit from the misapplication of funds. We reversed because, for one thing, we concluded that Seacott did, in fact, obtain personal gain from the misapplication of funds. But we also observed that circumstances like those in Seacott's case had been taken into consideration by the Sentencing Commission. As we see it, that is simply a statement that the case does not fall outside the heartland of the applicable guideline. We see nothing contrary to Koon in such a conclusion.

That said, and given that Corry's fraud bears striking similarity to Seacott's, we would be surprised if a district judge did not think it would be inappropriate to base a downward departure on a lack of personal gain. A fraud to keep a business afloat--especially a family business--is not all that unusual, either with or without direct personal gain. It can hardly be said to fall outside the heartland of sec.251.1. In addition, Corry's fraud actually involves much

more gain to her than did Seacott's fraud to him. As we said, the business Corry set about to save was a family business; her father was a founder and owner; her brother worked for the company-- not to mention the fact that she herself pulled down a $56,000 salary from Taurus. It would be quite a stretch, we think, to conclude that by cooking the books to keep this family business afloat, Corry did not receive a personal gain.

On a more practical level, however, the issue as presented here is rather hypothetical. At Corry's sentencing the claim that the loss overstated the seriousness of the offense was mixed in with her claim about the lack of personal gain. Corry's attorney said that the two were related. In fact, after arguing that Seacott no longer controlled, counsel said:

Clearly, the motivations and the reasons and the effect of Ms. Corry's conduct in this case take it out of the heartland of fraud cases and the factors considered by the sentencing commission, and we do feel that it is appropriate to depart downward because the amount of loss which has determined the offense level overstates the seriousness and wrongfulness of her conduct and that she did not personally profit from the activities as a result.

As this statement shows, Corry's argument that a downward departure should be ordered based on the lack of personal gain includes a statement that the loss overstates the seriousness of her conduct. Clearly the two bases in this case are related, and they were treated as related by Judge Barker. Given the way Corry's request was framed, it would be requiring watchmaker precision in the analysis of human conduct to require the district judge to determine exactly which factors are relevant to which argument, even if a lack of personal gain were an appropriate basis for departure.

That the loss overstates the seriousness of the offense is, to use Koon's terminology, an encouraged basis for departure. It was on that sound basis that Judge Barker granted a 2-level departure. It does no damage to the structure of the guidelines to say that Corry received all the consideration she could have obtained based on the circumstances of her crime. There is no indication from this record that if Judge Barker had divided the single argument into separate parts that Corry would have gotten more, in total, than the 2-level downward departure she received.

Finally, it should be emphasized that to the victim, the criminal's motives are mostly

irrelevant. If someone steals your wallet and gives the money in it to the Humane Society, rather than blowing it in Las Vegas, that's little comfort as you gaze at your empty pocket.

The sentence here was carefully and thoughtfully calculated. Ms. Corry got one 2-level downward departure, and she was not entitled to anything more on her related claim. The judgment of the district court is AFFIRMED.

Flaum, Circuit Judge, concurring. While I agree with the majority's outcome in this case, I write separately to explain the different reasoning by which I reach this conclusion. In United States v. Seacott, we held that lack of personal profit motive in a fraud case is a "legally insufficient reason to depart downward from the applicable Guidelines range." 15 F.3d 1380, 1387 (7th Cir. 1994). The district court interpreted Seacott's holding as "foreclos[ing]" it from considering failure to profit as a departure factor. I believe that the district court's interpretation of our holding in Seacott was correct. However, two years after Seacott, the Supreme Court's decision in Koon found that "for the courts to conclude a factor must not be considered under any circumstances would be to transgress the policymaking authority vested in the Commission." Koon, 518 U.S. 81, 106-07 (1996). The Court then held that "a federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor." Id. at 109. Failure to profit is not a ground expressly forbidden by the Commission. See U.S.S.G. Ch. 1, Pt. A 4(b). Thus, to the extent that our decision in Seacott precluded district courts from considering personal profit motive as a basis for departure, it has been superseded by the Koon analysis. It is understandable that the district court was reluctant to rule in a manner contrary to our holding in Seacott before this Court had interpreted Koon's effect on that case. However, in light of Koon, I believe that it was an error of law for the district court to conclude that it was foreclosed by Seacott from considering Corry's failure to profit as a departure factor.

On the facts of this case, however, the district court's legal error is harmless. Corry's fraud involved a deception conducted to keep a family business afloat. This business, moreover, employed Corry at a substantial salary. When Corry's fraud kept the family business viable, Corry benefitted both directly in terms of her continued salary and indirectly from the benefit to her immediate family. The facts of this case

plainly do not support the argument that Corry did not personally profit from the fraud she committed. Therefore, it would have been an abuse of discretion for the district court to have granted a downward departure on this basis even if that court had appropriately concluded that it was permitted to consider this ground. See Koon, 518 U.S. at 99-100 (stating that review of a district court's decision to grant a sentencing departure is for abuse of discretion). Thus, the legal error did not affect Corry's ultimate sentence and was harmless.