UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellant,*

v.

ROSELINE MAHEALANI VEALE KALILI,
　　　　　*Defendant-Appellee.*

No. 03-4927

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Raymond A. Jackson, District Judge.
(CR-03-75)

Argued: May 7, 2004

Decided: June 16, 2004

Before WIDENER and GREGORY, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Dennis Kyle Sampson, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellant. I. Lionel Hancock, III, BOHANNON, BOHANNON & HANCOCK, Norfolk, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Michael J. Elston,

Assistant United States Attorney, Lisa R. McKeel, Assistant United States Attorney, Alexandria, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

The government appeals the district court's decision to depart downward in the sentence imposed upon the defendant. We affirm.

I.

Roseline Kalili's daughter stole checks made payable to various vendors serving her employer. Kalili became involved with the criminal scheme at issue when her daughter brought the checks home, forged the payee's indorsement onto the back of the checks, and designated Kalili as the new payee. Kalili indorsed the checks by signing her name and affixing her social security number on the back of the checks.

The two women deposited into Kalili's account a single "test" check in the amount of approximately $1600. Before the deposit, Kalili had less than $10 in this account. After the check cleared, Kalili and her daughter made several cash withdrawals and made purchases at two stores. They later attempted to deposit more than $800,000 worth of checks into Kalili's account. The bank quickly detected these obviously suspicious transactions, refused to honor the checks, and contacted the authorities. Kalili immediately entered a plea of guilty to bank fraud, 18 U.S.C. § 1344, and waived her right to an indictment. Kalili's base offense level was six for bank fraud, U.S.S.G. § 2B1.1(a), but because the intended loss exceeded $800,000, her base offense level was increased by 14 points. U.S.S.G. § 2B1.1(b)(1)(H). She received a three-level adjustment for accep-

tance of responsibility, and because she had no prior criminal history, her adjusted base offense level was 17.

At sentencing, the district court identified alternative grounds for a downward departure—aberrant behavior and a finding that the offense level of 17 substantially overstated the seriousness of the crime. U.S.S.G. §§ 5K2.20; 2B1.1, App. Note 18(C). The court set Kalili's offense level at 12, and sentenced her to ten months in prison. Without the downward departure, Kalili's sentencing range would have been from 24 to 30 months.

## II.

The Prosecutorial Remedies and Tools against the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, 117 Stat. 650, (PROTECT Act), changed the standard of review we employ in reviewing a district court's decision to depart. Before the PROTECT Act, a district court's decision to depart was reviewed for abuse of discretion. *Koon v. United States*, 518 U.S. 81, 96-100 (1996). Under the PROTECT Act, 18 U.S.C. §§ 3742(e)(3) and (4) (as amended April 30, 2003), if the sentence falls outside the guidelines' range, we review de novo the district court's application of the Guidelines to the facts to decide whether the departure is based on a factor that (1) advances the objectives of federal sentencing policy, (2) is authorized under 18 U.S.C. § 3553(b), and (3) is justified by the facts of the case. *United States v. Pressley*, 345 F.3d 1205, 1209 n.1 (11th Cir. 2003).[1] *See also United States v. May*, 359 F.3d 683, 687-88 (4th Cir. 2004) (holding that we review the district court's factual determinations and the ultimate decision to depart downward de novo); *United States v. Stockton*, 349 F.3d 755, 764 (4th Cir. 2003) (same), *cert. denied*, 124 S. Ct. 1695 (2004).

---

[1]The PROTECT Act also requires a court of appeals to set aside a sentence if the district court failed to provide a written statement of the reasons for its departure. 18 U.S.C. § 3742(e)(3)(A), (f)(2)(B). Here, the record on appeal does not contain such a statement. However, because the parties have not raised the issue and because we review de novo the application of the Guidelines to the facts even when the court fails to provide a written statement of reasons, we will assess whether the departure was justified by the facts of the case. *United States v. May*, 359 F.3d 683, 688 n.5 (4th Cir. 2004).

Reviewing de novo, we find that the district court did not err in departing downward. As indicated, the district court departed downward on two alternative bases. The departure for aberrant behavior is a close call. To qualify as "aberrant behavior," the offense must be a single criminal occurrence or single criminal transaction of limited duration, committed without significant planning, and must represent a marked deviation from the defendant's usual law-abiding behavior. U.S.S.G. § 5K2.20(b).

Here, Kalili's conduct arguably involved more than a single transaction and substantial planning. The "test" deposit was made several days before the outrageously large deposit. *Cf. United States v. Glick*, 946 F.2d 335, 338 (4th Cir. 1991) (holding that five letters containing misappropriated, confidential information over the course of ten weeks was more than a single transaction).

Notwithstanding this concern, we find that the district court was on more solid ground in departing downward because Kalili's offense level substantially overstated the seriousness of the offense. Kalili's offense level was increased by 14 points based on an "intended loss" of between $400,000 and $1,000,000. U.S.S.G. § 2B1.1(b)(1)(H). If the loss was calculated at less than $5,000, (the restitution loss to the bank was $1135.28), the offense level would not have increased, and would have settled at three after the acceptance-of-responsibility adjustment.

The Guidelines do expressly provide for such a situation. *See* U.S.S.G. § 2B1.1, App. Note 3(A) (defining "loss" as "the greater of actual loss or intended loss," and defining "intended loss" as "the pecuniary harm that was intended to result from the offense . . . includ[ing] intended pecuniary harm that would have been impossible or unlikely to occur."). However, Application Note 18(C) to U.S.S.G. § 2B1.1 also provides: "There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted."

We agree with the district court that this was one of those cases contemplated by the Sentencing Commission. While Kalili's offense level was correctly increased to 17 based on an intended loss of over

$800,000, it is clear that this was not an $800,000 case. Not surprisingly, Kalili did not significantly profit from her daughter's ill-conceived scheme before they were caught. She withdrew some cash and also made a debit card purchase at Wal-Mart. At the time of sentencing, she had made nearly full restitution. In light of the foregoing, we find the district court did not err in departing downward in this case. *Cf. United States v. Corry*, 206 F.3d 748, 751 (7th Cir. 2000) (holding that loss overstating the seriousness of the offense is "an encouraged basis for departure").

Kalili's sentence advances the objectives of federal sentencing policy, is authorized by law, and is justified by the facts of the case.

*AFFIRMED*