United States Court of Appeals,

Eleventh Circuit.

No. 97-3486.

UNITED STATES of America, Plaintiff-Appellant,

v.

Kei TOMONO, Defendant-Appellee.

June 15, 1998.

Appeal from the United States District Court for the Middle District of Florida. (No. 97-Cr-127-ORL-22), Anne C. Conway, Judge.

Before COX and BLACK, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

Kei Tomono pleaded guilty to violations of the Lacey Act, 16 U.S.C. §§ 3372(a)(1) & 3373(d)(1)(B), and the federal anti-smuggling statute, 18 U.S.C. § 545, in connection with his illegal importation of reptiles. At sentencing, the district court granted a three-level downward departure for what it termed "cultural differences." The Government appeals the district court's ruling. We vacate the sentence and remand for resentencing.

I. BACKGROUND

Defendant Kei Tomono is a Japanese national who operates a commercial reptile import/export business called Amazon International. In April 1996 Tomono entered the United States at San Francisco on a flight from Japan. He carried in his luggage approximately 60 "Pignose" or "Fly River" turtles (*Carettochelys insculpta* ) and 113 "Irian Jaya Snake-Neck" turtles (*Chelodina siebenrocki* ). Upon entry to the United States, Tomono completed a standard Customs Declaration Form 6059B, which he was able to read and understand. A statement on the form read, "I am (We are) bringing fruits, plants, meats, food, soil, birds, snails, other live animals, wildlife

products, farm products; or have been on a farm or ranch outside the U.S." Tomono checked the box marked "No" in response to this statement. Tomono subsequently flew to Florida, where he sold the turtles to Tom Crutchfield of Tom Crutchfield's Reptile Enterprises, with whom he had a prior arrangement to sell the turtles.

In August 1997 Tomono again flew into San Francisco from Japan. On this trip, he had six "Red Mountain Racer" snakes and two Mandarin Rat snakes in his luggage. On his Customs form he again indicated that was not bringing any live animals into the United States. Tomono intended to sell these snakes to a reptile collector in Florida, and boarded a plane for Orlando. Unbeknownst to Tomono, government agents had conducted a border search of his luggage in San Francisco and found the snakes. After Tomono flew into Orlando and claimed his luggage, a Fish and Wildlife Service agent approached him. Tomono consented to a search of his luggage. The agent found the snakes and arrested Tomono and his traveling companion, Masakazu Iseya. The agent read Tomono his rights, both in English and through a Japanese translator.

A grand jury returned a five-count indictment against Tomono and Iseya, charging them with violations of the federal anti-smuggling statute, 18 U.S.C. § 545, and the Lacey Act, 16 U.S.C. §§ 3372 & 3373. The anti-smuggling statute makes it a crime to fraudulently or knowingly import goods contrary to law. *See* 18 U.S.C. § 545 (1994). The Lacey Act is specifically directed at fish and wildlife. It forbids the import, export, sale, or possession of fish or wildlife that has been "taken, possessed, transported, or sold" in violation of federal, state or foreign law. *See* 16 U.S.C. § 3372 (1994). Counts One and Three charged Tomono with bringing the turtles and snakes, respectively, into the country without declaring them to Customs, in violation of § 545. Counts Two and Five charged Tomono with Lacey Act violations in connection with his sale of the turtles to Crutchfield

and his attempted sale of the snakes. Pursuant to a plea agreement containing stipulated facts that Tomono adopted during the plea colloquy, Tomono pleaded guilty to Counts Two and Three.[1]

At the sentencing hearing, the district court found that the base offense level for a crime involving wildlife is six. *See* U.S. SENTENCING GUIDELINES MANUAL § 2Q2.1(a) (1997). The district court added two offense levels because the offense involved a commercial purpose, *see id.* § 2Q2.1(b)(1), and five more offense levels because it found that the market value of the wildlife was more than $40,000, *see id.* § 2Q2.1(b)(3)(A). The district court then subtracted two offense levels for acceptance of responsibility, resulting in a total offense level of eleven.

Tomono moved for a downward departure under § 5K2.0, alleging that because of the cultural differences between the United States and Japan, he was unaware of the serious consequences of his actions, and that these cultural differences constituted a factor not considered by the Sentencing Commission that should be taken into account in calculating his sentence. The district court agreed with Tomono, and granted him a three-level downward departure under § 5K2.0, bringing the offense level down to eight. Tomono was sentenced to five years of probation (unsupervised provided that he would leave the United States), a fine of $5000, and a special assessment of $200. The Government filed a Motion to Correct Sentence, contending that the judge had erred in granting a downward departure based on "cultural differences." The district court denied the motion. The Government appeals the downward departure.

## II. DISCUSSION

---

[1]Count Four charged Iseya with independently smuggling in two turtles in violation of 18 U.S.C. § 545. He pleaded guilty and was sentenced to 48 months of unsupervised probation, a fine of $5000, and a special assessment of $100. He is not a party to this appeal.

A sentencing court has the authority to impose a sentence outside the guidelines range if it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1994); *see also* U.S. SENTENCING GUIDELINES MANUAL § 5K2.0 (1997) (policy statement explaining appropriate circumstances justifying departure under 18 U.S.C. § 3553). In *Koon v. United States,* the Supreme Court clarified this aspect of the statute, holding that the unusual circumstances justifying the departure must take the case outside the "heartland" of cases contemplated by the applicable guidelines. *See Koon v. United States,* 518 U.S. 81, 94-96, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996). We review a district court's decision to depart downward for abuse of discretion. *Koon,* 518 U.S. at 99-100, 116 S.Ct. at 2047.

To aid in this review, we have held that a district court granting a downward departure must articulate the specific mitigating circumstances upon which it relies and the reasons why these circumstances take a case out of the guidelines' heartland. *See United States v. Onofre-Segarra,* 126 F.3d 1308, 1310 (11th Cir.1997). The district judge's reasons for granting a downward departure in this case are difficult to ascertain from the record. At Tomono's sentencing hearing, she stated:

> Basically, the court agrees with the defense that the cultural differences in this case give the court a basis to depart downward that is not otherwise available or covered by the Sentencing Guidelines. The factual statements contained in the defense's motion about the differences between the Japanese culture and the American culture show that the significance of this offense, while he was aware of some of the laws and regulations, the court has accepted his testimony that all of these turtles were four inches. What he has pled guilty to is the smuggling and the Lacey Act violations which he's agreed to, to plead to.
>
> The court finds that Mr. Tomono's not declaring [the animals] to the United States Customs could be well the result of the cultural differences and his misunderstanding of the laws and the forms. The court is departing three levels downward because the cultural

4

difference would be demonstrated by the difference in the market value in Japan versus the difference in the market value in the United States.

(R.4 at 6-7). She elaborated on her reasoning in her order denying the Government's Motion to Correct Sentence, concluding:

> Even though ignorance of the laws of a country is generally not sufficient to justify a downward departure, the cultural differences between this Defendant's culture and the laws of the U.S. are significant. For example, in Japan, snakeneck turtles and flyriver turtles are not endangered species and are common. Regulations are not as stringent and, as a result, Defendant would not have been arrested in Japan for keeping the animals. In addition, "[r]eptiles are a unique part of Japanese culture," and Defendant is respected for his work in the field.
>
> Accordingly, the Court finds that due to the cultural differences and unusual circumstances of this particular case, a downward departure is justified.

(R.2-71 at 3 (citations omitted)). From these two statements it appears that the district court's articulated reasons for departing from the guidelines, subsumed under the term "cultural differences,"[2] were: (a) the possibility that Tomono underestimated the consequences of bringing in the undeclared wildlife, both out of some ignorance of United States customs law and the relatively less stringent laws of his own country; (b) the fact that the turtles in question are not endangered species and are relatively common in Japan; (c) the "unique" place that reptiles occupy in Japanese culture; and (d) the fact that Tomono is respected in his community for his work with reptiles.

---

[2]We note, as the Third Circuit has, that the Sentencing Commission has expressly stated that national origin is not relevant as a factor in the determination of a sentence, *see* U.S. SENTENCING GUIDELINES MANUAL § 5H1.10 (1997), and that considering any "cultural differences" attributable solely to a defendant's country of origin comes uncomfortably close to considering the defendant's national origin itself, in contravention of the guidelines. *See United States v. Yu,* 954 F.2d 951, 954 & n. 2 (3d Cir.1992).

Given the record before us, we cannot say that the circumstances identified by the district court are significant enough to take this case out of the heartland of the guidelines. The fact that the turtles may or may not be endangered is already considered in the applicable guideline, which mandates a four-level enhancement if the wildlife in question is listed in the Endangered Species Act or the Convention on International Trade In Endangered Species. *See* U.S. SENTENCING GUIDELINES MANUAL § 2Q2.1(b)(3)(B) (1997). The community respect Tomono enjoys due to his work with reptiles could be considered to be evidence of either his community ties, his vocational skills, or his prior good works, all of which the Sentencing Commission has declared are "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." *Id.* §§ 5H1.2, 5H1.5, 5H1.11 (1997). As for the "unique" place that reptiles occupy in Japanese culture, there is no evidence in the record that would support such a finding other than the allegations in Tomono's motion for downward departure; as we have held previously, the arguments of counsel are generally an insufficient basis upon which to depart from the guidelines. *See Onofre-Segarra,* 126 F.3d at 1310-11.[3]

This leaves us with Tomono's claimed ignorance, presumably arising from "cultural differences," of the consequences of his actions under United States law. Tomono's business was the importation and exportation of wildlife. Although he may not have been an expert in United States customs law, Tomono testified that he knew that United States regulations forbid the importation of turtles with a carapace length of less than four inches, and that he was aware of "other rules" regarding the importation of animals. *See* Transcript of Sentencing Hearing, Record Excerpts

---

[3]The district court may have inappropriately relied in part on these statements in granting the departure. *See* R.4 at 6 (referring to "[t]he factual statements contained in the defense's motion about the differences between the Japanese culture and the American culture").

6

Tab 60 at 95, 105. He stipulated in his plea agreement that he understood the customs forms on which he made a false statement. (R.1-49 at 17). Section 2Q2.1 of the guidelines, under which Tomono was sentenced, specifically applies to crimes involving the illegal importation and exportation of wildlife. *See* U.S. SENTENCING GUIDELINES MANUAL § 2Q2.1 cmt. (1997). By definition, imported wildlife comes from other countries; presumably, a significant portion of illegally imported wildlife will be imported by people from other countries, many of whom will have an imperfect understanding of United States customs law. The record before us does not support the conclusion that the circumstances surrounding Tomono's crime were very different from the heartland of cases considered by the Sentencing Commission in drafting § 2Q2.1. We hold that the district court abused its discretion in concluding that the circumstances of this case were sufficiently unusual to justify granting Tomono a downward departure under § 5K2.0.[4]

### III. CONCLUSION

For the reasons stated above, we VACATE Tomono's sentence and REMAND for resentencing consistent with this opinion.

VACATED AND REMANDED.

RONEY, Senior Circuit Judge, dissenting:

I respectfully dissent. This is apparently the first case in which a court of appeals has ever reversed a district court's departure for reasons such as those set forth here, reasons that have been dubbed "cultural differences." Every case cited in the briefs and in the court's opinion have simply refused to reverse a district court's denial of a downward departure based on cultural differences.

---

[4]We need not decide whether "cultural differences" may ever be an appropriate ground upon which to depart from the guidelines.

I agree with Chief Judge Becker's dissent in *United States v. Yu*, 954 F.2d 951, 957-59 (3rd Cir.1992), where he concluded that the Sentencing Commission has not rejected consideration of a defendant's culture in making sentencing decisions.

Thus, in my judgment, the district court had discretion to depart downward under the guidelines. The issue is whether the district court abused that discretion. I believe that the integrity and purpose of the sentencing guidelines require appellate courts to be slow to encroach on the discretion given to the sentencing courts. District court judges sit in a preferred position to understand the justice of each situation, while we must learn what we can from reading a cold record. Because district courts have an "institutional advantage" in determining when a case falls outside the heartland of guidelines cases, we should not substitute our own judgment unless a district court has abused its discretion. *Koon v. United States*, 518 U.S. 81, 98-99, 116 S.Ct. 2035, 2046-47 (1996).

The very idea of discretion means that a sentencing court could go either way and not be wrong on appeal. In this case, I would not encroach upon that discretion, but would affirm, leaving the exercise of that discretion to the district court. The Supreme Court has explained that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon*, 518 U.S. at 113, 116 S.Ct. at 2053. In this case, the defendant was a Japanese citizen who had only traveled to the United States twice before. The district court found that his offense "could be well the result of the cultural differences and his misunderstanding for the laws and the forms," and granted a three-level downward departure. I believe that the district court did not abuse its discretion.