[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 02-10674

———————————————

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 16, 2003
THOMAS  K. KAHN
CLERK

D.C. Docket No. 95-00189-CR-JEC-1-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THOMAS PRESSLEY,

Defendant-Appellant.

———————————————

Appeal from the United States District Court for the
Northern District of Georgia

———————————————

**(September 16, 2003)**

Before EDMONDSON, Chief Judge, KRAVITCH and GIBSON[*], Circuit Judges.

JOHN R. GIBSON, Circuit Judge:

———————————

[*]Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Thomas Pressley appeals from the sentence of 360 months' imprisonment that the district court imposed upon him on remand from this court for resentencing. Pressley argues that on remand the district court erred in imposing consecutive sentences under United States Sentencing Guidelines § 5G1.2 and in declining to depart downward from the guidelines sentence on the ground that his offense level overstated the seriousness of his offense or that the conditions of his presentence confinement were extraordinarily harsh. We remand for the district court to exercise its discretion as to whether to depart on the basis of conditions of presentence confinement.

Pressley was indicted on May 3, 1995 and convicted by a jury on November 1, 1996 on nine counts, including one count of continuing criminal enterprise, two counts of conspiracy to possess cocaine with intent to distribute it, one count of distribution of cocaine, one count of possession of cocaine with intent to distribute it, one count of attempt to possess cocaine with intent to distribute it, and three counts of money laundering in connection with the purchase of three automobiles. The district court subsequently acquitted Pressley on the continuing criminal enterprise count and sentenced him on the remaining counts. The court found Pressley was responsible for between 50 and 150 kilograms of cocaine and gave a two-point upward adjustment for role in the offense. The court adjusted upward

by two points for use of a weapon and two points for restraint of the victim, but because those two adjustments arose out of the same conduct, the court concluded that the two adjustments were double-counting and departed downward by two points, to arrive at a sentencing range of 292 to 365 months. The court sentenced Pressley to 292 months.

Pressley appealed, arguing that the district court erred in finding him responsible for 50 kilograms or more of cocaine. We held the finding was not clearly erroneous. United States v. Pressley, No. 99-12731, slip op. at 3 (11th Cir. July 24, 2000) (per curiam) (unpublished). The government cross-appealed the departure, and we reversed and remanded for resentencing without the departure. Id., slip op. at 6.

The guidelines range without the downward departure was 360 months to life. Because no count on which Pressley was convicted carried a 360-month sentence, in order to achieve the guidelines target sentence, U.S.S.G. § 5G1.2 required the court to run two of the sentences consecutively.

On remand, Pressley moved for a downward departure on the grounds that the guidelines sentence overstated the seriousness of Pressley's offense, that the conditions of his presentence confinement were harsh, and that consecutive sentences resulting in more jail time than the statutory maximum of any of his

3

crimes violated the spirit of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

The district court rejected Pressley's three arguments for departure and sentenced him to 360 months' imprisonment, which was the bottom of the guidelines range based on the court's findings from the first sentencing, without the downward departure that we had reversed. The court imposed 240 months, the statutory maximum, on Counts 2, 3, and 4, to run concurrently with each other, and 120 months on Counts 5, 6, 13, 14, and 15, to run concurrently with each other and consecutively to the sentences on Counts 2, 3, and 4.

I.

All three points on appeal involve the district court's refusal to depart downwardly from the guidelines sentence. The first point also involves interpretation of the guidelines and a legal argument that a provision of the guidelines violates the Constitution.

Generally, we review the district court's application of the guidelines to the facts for clear error. <u>United States v. White</u>, 335 F.3d 1314, 1317 (11th Cir. 2003). We review de novo its determination that the provision in question does not violate the Constitution. <u>See</u> <u>United States v. Tinoco</u>, 304 F.3d 1088, 1099 (11th Cir. 2002) (review of constitutionality of statute), <u>cert. denied</u>, 123 S. Ct. 1484 (2003); <u>United States v. Leasure</u>, 319 F.3d 1092, 1096 (9th Cir. 2003)

4

(review of constitutionality of sentencing guidelines).

Review of guidelines departure decisions is governed by different rules depending on whether the district court has chosen to depart or not to depart. We may not review at all the district court's discretionary decision not to depart from the guidelines' sentencing range, but we review de novo the question of whether the district court erroneously believed it lacked authority to depart. United States v. Mignott, 184 F.3d 1288, 1290 (11th Cir. 1999) (per curiam). Not only do we examine whether the district court in fact believed it lacked authority to depart, but we also review whether, if the district court held such a belief, it was based on legal error. See United States v. Alfaro-Zayas, 196 F.3d 1338, 1342, 1344 (11th Cir. 1999) (per curiam) (district court correctly concluded it had no authority to depart in particular case); United States v. Webb, 139 F.3d 1390, 1395 (11th Cir. 1998) (district court concluded it had no authority to depart, but erred because guideline authorized departure). Deciding whether the district court was correct in a belief that it did not have authority to depart requires us to locate the boundaries of the district court's departure authority.

Once a proposed ground for section 5K2.0 departure has been put forth by the parties, the district court's departure decision entails three reviewable steps, see United States v. Miller, 146 F.3d 1281, 1284 (11th Cir. 1998) (citing United

5

States v. Hoffer, 129 F.3d 1196, 1201 (11th Cir. 1997)), at each of which the district court's authority to depart has an outer limit.[1]

First, the sentencing court must decide whether the facts of the case take the case outside the heartland of the applicable guideline. Miller, 146 F.3d at 1285-86. In making the heartland determination, the district court must ascertain whether the presence of the proposed ground makes the case unusual, see United States v. Steele, 178 F.3d 1230, 1239-40 (11th Cir. 1999) (lack of profit from crime is not sufficiently atypical to support downward departure because there are many drug cases where the defendant realizes little or no profit), and whether it is unusual in a way that ought to lead to a different sentence, see United States v.

---

[1]After oral argument in this case, Congress enacted the Prosecutorial Remedies and Tools against the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, 117 Stat. 650, to be known as the PROTECT Act. The PROTECT Act changed the standard of review we employ in reviewing a district court's decision to depart. Before the PROTECT Act, the question of whether the facts of a case supported a departure was reviewed for abuse of discretion. Koon v. United States, 518 U.S. 81, 96-100 (1996). Under the PROTECT Act, where the sentence is outside the guidelines range, we review de novo the district court's application of the guidelines to the facts to decide whether the departure is based on a factor that (a) advances the objectives of federal sentencing policy, (b) is authorized under 18 U.S.C. § 3553(b), and (c) is justified by the facts of the case. 18 U.S.C. §§ 3742(e)(3) and (4) (as amended April 30, 2003).

Because § 3742(e)(3) (as amended) only governs review of decisions to depart and this case involves a decision not to depart, the change in the standard of review is not directly relevant to our case. But insofar as § 3742(e)(4) more tightly circumscribes the district courts' authority to depart by applying a more stringent standard of review to their departure decisions, it would bear on the question of whether the departures at issue would have been within the district court's authority. However, none of the three departure issues before us is close enough to be affected by this modification of the district court's authority. We have no need, therefore, to decide whether the PROTECT Act applies to a case pending on appeal at the time of enactment.

Pickering, 178 F.3d 1168, 1173 (11th Cir. 1999) (district court erred in failing to "undertake a refined assessment of the facts of Pickering's case in order to demonstrate that it fell outside of the heartland in a way important to the statutory purposes of sentencing"); see also United States v. Hirsch, 280 F.3d 811, 814 (7th Cir. 2002) ("Just because a case has features that are unusual does not mean that a departure is warranted.  Rather the unusual features must suggest a rationale for a difference in the sentence prescribed by the Guidelines.").  Both aspects of this determination are reviewable, see Steele, 178 F.3d at 1239-40 (reversing departures because proposed ground not atypical); United States v. Maung, 320 F.3d 1305, 1309-10 (11th Cir. 2003) (reversing departure because avoiding collateral effect of conviction on alien's immigration status not ground for departure).  Consequently, a district court would be correct to believe that it had no authority to depart in a case which was not atypical or not atypical in any way that ought to lead to a departure.

Second, the district court must determine whether the proposed ground for departure was adequately taken into account by the Sentencing Commission in formulating the guidelines.  Hoffer, 129 F.3d at 1201; United States v. Melvin, 187 F.3d 1316, 1320 (11th Cir. 1999).  Only circumstances not adequately taken into account by the Commission justify a section 5K2.0 departure.  18 U.S.C. §

7

3553(b). The court should ask whether departures on the proposed ground are forbidden, encouraged, or discouraged. Koon v. United States, 518 U.S. 81, 95-96 (1996). If forbidden, of course, the proposed ground cannot support a departure. Id. If encouraged and not taken into account, the proposed ground will support a departure in an appropriate case. Hoffer, 129 F.3d at 1200. If discouraged or if encouraged but already taken into account by the guidelines (as, for example, a specific offense characteristic), the proposed ground may serve as a basis for departure only if it exists to a degree or in a form that makes the case different from the ordinary case in which the proposed ground is present. Koon, 518 U.S. at 96. If the ground is not mentioned as a basis for departure, the court must decide whether the factor was adequately taken into consideration in formulating the guidelines, looking at the "structure and theory of both the relevant individual guidelines and the Guidelines taken as a whole." United States v. Schlaen, 300 F.3d 1313, 1319 (11th Cir. 2002) (quoting Koon, 518 U.S. at 96), pet'n for cert. filed, No. 02-11073 (June 2, 2003). A district court lacks authority to depart in a case in which the proposed ground for departure was adequately taken into account by the Sentencing Commission. See Steele, 178 F.3d at 1239 (abuse of discretion to depart on ground that would negate enhancement provided by guidelines).

Third, if the factor takes the case out of the heartland, and the factor has not been adequately taken into account by the Sentencing Commission, the district court should decide whether the facts of the case before it exhibit the factor sufficiently to support a departure. Miller, 146 F.3d at 1284; United States v. Hernandez, 160 F.3d 661, 668 (11th Cir. 1998) (reviewing deferentially district court's factual determination of "whether the factor relied on . . . to depart upward is present to such a degree as to warrant an upward departure"). The district court has the authority to depart only when the record supports its findings of fact, which we review for clear error. See United States v. Kapelushnik, 306 F.3d 1090, 1095 (11th Cir. 2002) ("[T]he factor which removes the case from the heartland of the guidelines and warrants a downward departure must be supported by evidence in the record."); Steele, 178 F.3d at 1238-39 (abuse of discretion to base departure on finding of fact contrary to jury verdict); United States v. Tomono, 143 F.3d 1401, 1404 (11th Cir. 1998) (reversing departure where facts relied on not proven); White, 335 F.3d at 1317 (clear error standard). We have reversed sentences in which, although there was some evidence substantiating the district court's findings of a mitigating factor, the facts found did not rise to the level that would justify a departure. E.g., Pickering, 178 F.3d at 1172 (reversing departure based in part on "aberrant behavior," where facts did not show behavior

9

was sufficiently aberrant to justify departure); <u>Tomono</u>, 143 F.3d at 1403-04 (reversing departure based on ignorance of law regarding importation of wildlife due to cultural differences where defendant was dealer in wildlife and knew something about the law).

Thus, considering the limits on the district court's authority to depart, we proceed to examine the sentencing decision in this case to ascertain, first, whether the district court believed it lacked authority to depart and if so, whether that belief was erroneous.

## II.

At the resentencing hearing on January 11, 2002, the district court rejected each of the three bases Pressley offered as grounds for a downward departure. The court held that the guidelines required it to impose consecutive sentences as necessary to achieve the guidelines range. The court stated:

> If it were a question do I have the discretion whether to make these consecutive, then we would talk about that. But I will say on the record, and Ms. Michaels then can understand where her appeal route lies, <u>I don't think I have any discretion.</u>
> I think that the guidelines, 5G1.2 if I've got the right number, say that once you receive or you figure a guidelines number–let's say it's 360 months–then if you've got enough counts to work with, you have to use those counts. I see that as what the guidelines clearly say.

(emphasis added). We understand from the court's legal discussion that the court

believed both that U.S.S.G. § 5G1.2 made imposition of consecutive sentences mandatory in this case and that no departure was possible on the ground that the sentence mandated by section 5G1.2 violated the spirit of Apprendi v. New Jersey, 530 U.S. 466 (2000). Thus, the court did in fact believe that it lacked authority to depart on this ground because there was no factor that made the case atypical in a way that ought to lead to departure. United States v. Miller, 146 F.3d 1281, 1284 (11th Cir. 1998) (first of three steps for departure is determination of atypicality).

The court also discussed whether it could depart on the ground that the offense level, as determined by the amount of drugs attributable to Pressley, overrepresented the seriousness of his offense. Pressley's counsel argued that Pressley possessed small amounts of drugs over a long period of time, which gave him a large quantity of drugs (between 50 and 150 kilograms) as the basis of his offense level, but that he was less culpable than someone who dealt in large amounts of drugs. The court held that this argument was contrary to the guidelines' sentencing scheme:

> The argument that you are not a big deal drug dealer, the guidelines work the way they work, and that is really just a way of saying the guidelines overstate your offense, which is in fact an explicit argument by Ms. Michaels, but it is not one that I believe I have the power to entertain.
> One could enact a drug sentencing system . . . I think it could make sense, which is that for the fellow that has huge quantities of

11

drugs on a few numbers of occasions, a Carlos Lederer or somebody that just owns massive quantities that you can snapshot and you see he's a kingpin, that kind of person deserves a 36 or a 38 [offense level]. But the fellow who is kind of just eking out quantities over a period of time to get up to that amount is not really a kingpin. He is just a long-time drug dealer, which is not great, but the argument goes that he shouldn't be receiving that kind of time.

That is an argument you can make, but that is not our sentencing system. Our sentencing system does not make that kind of distinction. So adding the numbers up . . . I see no ground for departure in the fact that your seriousness is overrepresented. <u>I will say on the record I don't think the law would allow me.</u> I do not think I would be able to depart.

(emphasis added). Thus, the court held that it lacked authority to depart because

the factor in question had been taken into account by the guidelines. See Miller,

146 F.3d at 1284 (second of three steps for departure is determining whether

factor adequately taken into account by guidelines).

As a further ground, the court also stated that the amount of drugs

attributable to Pressley had been appealed and affirmed on appeal, so that the

amount was the law of the case:

As to what I must do under the law, and that is what I have to follow, I see it as I have almost no discretion here in this case as to the offense level. The last eleventh circuit case was the law of the case. I can't go back behind that. The quantity was set as of the time of that case.

So, the court held for two reasons that it had no discretion to depart on the

ground that the quantity of drugs attributed to Pressley overstated the seriousness

12

of his crime.

Finally, the court considered whether it could depart downward for the custodial conditions Pressley had endured in presentence detention. Pressley testified at the hearing: "Ever since I was down for the last six years, your honor, I spent five years in confinement where I have not been outside. I spent 23 hours a day at USP Atlanta every day, 23 hours a day lockdown. Before I came back on this case I spent three years at pretrial and haven't been outside in five years total."

The court held that, while conditions of presentence confinement could be a basis for departure in an appropriate case, as a matter of law the facts of Pressley's case would not justify a departure:

> Well, I will state on the record that I will not depart based on custodial conditions; that my belief is that on the record in this particular case that the eleventh circuit would not sustain me on such a departure. Therefore, you may appeal me on that if you wish, which means I don't want the eleventh circuit punting it back to me, saying decide, because I'm saying here are the facts. And then they'll say there's a general ground but, you know, look at the facts. And then you look at the facts and they like them or they don't like them.
>
> You know, if they think–the facts are the facts and I believe based on the facts here they would not sustain that sort of downward departure. If they disagree with me, then I guess we'll have a remand on that. But I believe if I departed right now on these facts they would reverse me. So I will state honestly that I don't believe I have the power and that gives Ms. Michaels the right to appeal me on that.

The prosecutor asked for further clarification, and the court reiterated its

understanding that conditions of confinement could be a basis for departure, but that the facts of this case, as a matter of law, would not support departure on that ground:

> I assume that there could be some conditions if somebody is getting their toes chopped off or beaten up, but on the facts of this particular case, I do not believe the eleventh circuit would uphold such a departure and therefore I am declining to depart on that ground. . . . If I have discretion, I would go lower than 360. There is no question about that.

The court later added in a telephonic conference:

> [W]ere I allowed to depart, if I had the power, what I would do is I would give him approximately a day for a day. And if he has been in five years, I would depart two and a half years, and I want the eleventh circuit just to be real clear so they understand everything.

Thus, the court held that it lacked authority to depart on the presentence confinement ground because the facts were insufficient as a matter of law. See Miller, 146 F.3d at 1284 (third of three steps for departure is determination of sufficiency of facts).

It is clear from the record that the district court believed it lacked authority to depart on any of the three grounds urged by Pressley. We must determine whether the district court's belief was right or wrong.

14

## III.

Pressley first argues that the district court erred in concluding that it was obliged to impose the sentences on the various counts consecutively rather than concurrently. His argument has three parts. First, he argues that imposing consecutive sentences on the various counts would violate the spirit of Apprendi v. New Jersey, 530 U.S. 466 (2000), by subjecting him to a total sentence exceeding the statutory maximum for any single count. As long as the sentence imposed on each count was within the statutory maximum for that conviction, Apprendi does not forbid imposing the sentences consecutively. United States v. Davis, 329 F.3d 1250, 1254-55 (11th Cir. 2003) (per curiam), pet'n for cert. filed, No. 03-5748 (Aug. 6, 2003).

Second, Pressley argues that the district court erroneously considered itself bound to follow U.S.S.G. § 5G1.2(d), which requires multiple sentences to be served consecutively if the sentence specified by the guidelines is longer than the sentence authorized for any individual count of conviction. We have recently joined the majority of circuits, which holds that imposition of consecutive sentences under section 5G1.2(d) is mandatory. Davis, 329 F.3d at 1253-54.

Third, Pressley argues that even though consecutive sentencing may be mandatory under section 5G1.2(d), the district court could have imposed the

15

sentences concurrently by departing downward. A court may decline to impose consecutive sentences, even when required by section 5G1.2, if there are grounds for departing from the guidelines sentence. See United States v. Perez, 956 F.2d 1098, 1103 (11th Cir. 1992) (concurrent sentence required by section 5G1.2, but district court could depart upward to impose consecutive sentence); see also United States v. Fossett, 881 F.2d 976, 980 (11th Cir. 1989) (in section 5G1.3 case, "district court could have ordered appellant to serve her sentences concurrently only if the court had followed the procedures for departing from the sentencing guidelines"). The first step in deciding whether to depart is to identify the proposed ground that renders the case atypical. Koon v. United States, 518 U.S. 81, 95 (1996). Pressley has not identified any reason for departing from section 5G1.2(d) except the Apprendi argument that we have already determined was based on an incorrect legal argument. The district court did not err in determining that an incorrect legal argument provided no basis for a departure.

Pressley's reply brief raises a further argument for departure, developed in United States v. Rahman, 189 F.3d 88, 157 (2d Cir. 1999) (per curiam), in which the Second Circuit held that a district court could depart downward on the ground that the defendant had been convicted of multiple charges for what was essentially the same criminal conduct, resulting in more convictions available to run

16

consecutively in order to reach the full guidelines range. The Second Circuit's theory was not that the guidelines range was unfairly manipulated by piling on charges arising out of the same criminal conduct, since the guidelines' grouping rules address this problem. See U.S.S.G. § 3D1.2. Instead, the theory was that by piling on charges the prosecutor increased the number of counts available to run consecutively in order to reach the guidelines range. In Rahman, the defendant El-Gabrowny had a guidelines sentence of life imprisonment. 189 F.3d at 155. He had been convicted on ten counts, the most serious of which carried a twenty-year sentence. Nine of the counts arose out of what were essentially two criminal acts. Id. at 156. Because of the number of counts of conviction, the application of U.S.S.G. § 5G1.2 resulted in all ten sentences being run consecutively to reach a fifty-seven-year sentence. The Second Circuit held that the Sentencing Commission did not give adequate consideration to the possibility that arbitrary or manipulative charging decisions (which were supposedly neutralized by the grouping rules, see U.S.S.G. Ch. 3 Pt. D, Introductory Commentary ("In order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct, this Part provides rules for grouping offenses together.")) would result in a longer sentence because of

U.S.S.G. § 5G1.2.[2] Id. at 157.  This reasoning assumes that the Sentencing Commission would have preferred for the defendant's sentence to fall short of the guidelines target because there were not enough years on the counts of conviction to reach the guidelines' range.  Actually, we believe U.S.S.G. § 5G1.2 is evidence to the contrary, showing an intent on the part of the Commission to achieve a sentence as close as possible to the guidelines' range.

Moreover, it would contradict our holding in Davis, that the imposition of consecutive sentences under section 5G1.2 is mandatory, to hold that the operation of the section was itself a basis for downward departure.  We therefore hold that the mere operation of section 5G1.2 to increase the available aggregate sentence up to the guidelines' range, without more, does not render the case atypical.  Accordingly, the district court did not err in concluding that it had no authority to depart from imposing consecutive sentences to the extent required by section 5G1.2.

---

[2]The Third Circuit has held that section 5G1.2 does not limit a district court's discretion to choose under 18 U.S.C. § 3584 whether to impose consecutive or concurrent sentences. United States v. Velasquez, 304 F.3d 237, 246 (3d Cir. 2002), cert. denied, 123 S. Ct. 1609 (2003). Velasquez repudiated the idea that a departure was necessary in order to deviate from the rule imposed by section 5G1.2.  The Third Circuit relied on the undesirability of allowing charging decisions to affect the length of sentence to conclude that the district court properly exercised its discretion to impose concurrent sentences, notwithstanding the contrary instruction of section 5G1.2.

IV.

Pressley next contends that the district court erred in holding that it had no discretion to depart on the ground that Pressley's offense level overstated the seriousness of his offense. Again, the first step in the departure process is identifying the proposed ground for departure. Koon v. United States, 518 U.S. 81, 95 (1996).

Pressley offers the general ground that the offense level "overstates the seriousness of his offense." Pressley relies on language from an application note from an earlier version of the guidelines[3] that appeared at U.S.S.G. § 2B1.1, n. 15(B) (Nov. 2001), the guideline for theft, embezzlement, receipt of stolen property, property destruction, and offenses involving fraud or deceit, on the date of the final resentencing hearings: "There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the

_____

[3]Pressley cites U.S.S.G. § 2F1.1, comment. (n.8). Section 2F1.1 was deleted by consolidation with section 2B1.1, effective November 1, 2001. See Supp. to Appendix C, amendment 617. We are instructed to apply the version of the guidelines in effect on the date of sentencing unless that would violate the ex post facto clause. See U.S.S.G. § 1B1.11 (2002). This case does not appear to present any ex post facto clause violations. "The date of sentencing" has been interpreted to mean the date of the sentencing hearing. United States v. Descent, 292 F.3d 703, 707 (11th Cir. 2002), cert. denied, 123 S. Ct. 913 (2003). Other circuits have held that upon remand for resentencing, the court applies the version of the guidelines in effect at the date of resentencing. United States v. Torres, 251 F.3d 138, 145 n.2 (3d Cir.), cert. denied, 534 U.S. 936 (2001); United States v. Young, 247 F.3d 1247, 1250 n. 4 (D.C. Cir. 2001). The final resentencing hearings occurred in January 2002, when the November 2001 manual was in effect. Therefore, we will use the November 2001 manual.

19

offense. In such cases, a downward departure may be warranted." Pressley argues that drug cases are analogous to fraud cases, because in each the offense level is a function of the magnitude of the crime, as measured by the amount of drugs or monetary loss, respectively. Compare U.S.S.G. § 2D1.1 with § 2B1.1(b). He contends that a downward departure should also be available where the offense level determined by counting up the amount of drugs attributable to the defendant substantially overstates the seriousness of the offense.

We must be very cautious in importing language from one guideline to another. See United States v. Hernandez, 160 F.3d 661, 669 n.5 (11th Cir. 1998) (analogizing only after careful comparison of guidelines indicated similar context); United States v. Brennick, 134 F.3d 10, 15 (1st Cir. 1998) ("[P]rovisions in one set of guidelines cannot normally be transferred to another separate set of guidelines."). The language in the commentary to the theft, embezzlement and fraud guideline was drafted to address considerations peculiar to the economic crimes covered in section 2B1.1. The drug guidelines specifically mention several ways in which the drug amount might not adequately reflect the seriousness of the crime. See § 2D1.1, comment. (n. 9) (high purity of drug might warrant upward departure); comment. (n.1) (where drug mixed with extraneous material in a sophisticated way to avoid detection, upward departure might be warranted); and

20

comment. (n.14) (downward departure could be warranted in a reverse sting where government sold drugs to defendant below market price to increase amount of drug involved in deal).  Because the various guidelines are drafted to address problems attendant on different types of crime, we are not convinced that we should borrow from commentary in the theft, embezzlement and fraud guideline in this drug case.

But even if we were to import language from the fraud guideline into the drug offense guidelines, Pressley would gain no advantage.  We might consider the idea of "overstating seriousness" an encouraged ground, see United States v. Corry, 206 F.3d 748, 751 (7th Cir. 2000) ("That the loss overstates the seriousness of the offense is, to use Koon's terminology, an encouraged basis for departure."), but we could not excuse Pressley from explaining why the guideline formula is misleading in his case.  The "overstating seriousness" language is "little more than another way of saying that departures from the loss table may be warranted for good cause."  Brennick, 134 F.3d at 15 (emphasis in original).  Once we identify the proposed reasons for departure, even with an encouraged ground, we still must determine whether the guidelines take the factor into account.  Koon, 518 U.S. at 96.  If the guidelines already take the factor into account, the court may depart "only if the factor is present to an exceptional degree or in some other way makes

the case different form the ordinary case where the factor is present." Id.

All three reasons Pressley contends show the drug amount was misleading have already been taken into account by the guidelines, and he presents no evidence that they are present in an exceptional form or degree. He first argues that the amount of the drugs attributable to him was exaggerated by the witnesses. Deciding whether to believe the witnesses and what amounts of drugs their testimony supports is part of the fact-finding process the district court must perform in order to figure the offense level to begin with.[4] The difficulty of making credibility determinations is inherent in the district court's role as fact-finder under the guidelines and cannot take one case outside the heartland without opening the door to departures in all cases with disputed facts. If the evidence does not support a finding of a fact by the preponderance of the evidence, the proper course for the district court is to conclude that the fact was not proven, rather than to find the fact and then depart downward because the finding was unreliable. Cf. United States v. Meacham, 115 F.3d 1488, 1498 (10th Cir. 1997) (reversing departure based on district court's doubts about credibility of evidence the jury accepted); United States v. Haut, 107 F.3d 213, 218-23 (3d Cir. 1997)

_____

[4]Indeed, the record shows that in reckoning the offense level, the district court discounted the drug amounts in order to account for its doubts about the credibility of the witnesses.

22

(same); United States v. Brooks, 966 F.2d 1500, 1505 (D. C. Cir. 1992) (affirming district court's ruling that it could not depart downward based on weakness of case that withstood motion for acquittal and on which jury returned guilty verdict).

Moreover, reconsideration of the drug amount was beyond the district court's power in this case. Pressley had argued on his first appeal that the determination of the drug amount in his case was clearly erroneous; this Court held it was not. Pressley, slip op. at 3-4. That determination was the law of the case when Pressley appeared before the district court for resentencing, and the mandate rule would forbid premising a departure on the erroneousness of a finding we had already said was not clearly erroneous. See United States v. Escobar-Urrego, 110 F.3d 1556, 1561 (11th Cir. 1997). The district court correctly determined that it was not permissible to depart on the ground that the amount determination was faulty.

Next, Pressley argues that the quantity attributable to him overstates the seriousness of his offense because the quantity is the aggregate of small amounts possessed from time to time, rather than the amount that he possessed at any one time. The district court concluded that discounting the drug quantity attributable to the defendant because he did not possess a large quantity at one time would contradict the guidelines' basic method of drug offense computation by

23

aggregating amounts.  See § 2D1.1, comment. (n. 6) ("Where there are multiple

transactions . . . the quantities of drugs are to be added.").  When a proposed

ground for departure would negate an aspect of the guidelines as written, the

proposed ground is deemed to have been adequately taken into account by the

Sentencing Commission.[5]  See United States v. Steele, 178 F.3d 1230, 1239 (11th

Cir. 1999) (abuse of discretion to depart on ground that would negate

enhancement provided by guidelines).  The district court did not err in holding that

it was not authorized to depart on the ground that Pressley possessed the drugs

included in the calculation at various times, rather than all at once.[6]

_____

[5]More specifically, the history of section 2D1.1 shows that the Commission did consider the circumstances under which drug quantity calculations might overstate the seriousness of the defendant's conduct and it did not consider cases such as Pressley's appropriate for departure. Amendment No. 485 added a note 16 to section 2D1.1, effective November 1, 1993, which encouraged a departure when the court found that the offense level overrepresented the defendant's culpability and various other criteria were met.  Pressley would not have qualified for the note 16 departure because he failed to meet several criteria. U.S.S.G. App. C.  Note 16 (or note 14 as it was renumbered) was eliminated in November 2001 by Amendment No. 624, effective November 1, 2001, Supp. to App. C.

[6]The Second Circuit, in United States v. Lara, 47 F.3d 60, 66-67 (2d Cir. 1995), affirmed departures based on what it described as the "quantity/time factor," i.e., that selling small amounts at many times is indicative of a lower level of culpability than selling a large amount at once.  Id. at 65.  However, the Second Circuit considered offenses that were committed before November 1, 1993, the effective date of Amendment No. 485, in which the Commission adopted an encouraged ground of departure that could include consideration of the quantity/time factor. The Second Circuit reasoned that the Commission considered the quantity/time factor for the first time when it adopted Amendment No. 485, and that therefore the quantity/time factor had not been taken into consideration at the time of Lara's offense.  Id. at 66.  Therefore, the Lara departures were based on pre-Amendment No. 485 law and Lara's holding is not applicable to post-Amendment No. 485 cases such as Pressley's.  We have already noted that Pressley would not have been eligible for a departure under Amendment No. 485.  See note 5, supra.

As for Pressley's assertion that he was a "one-man band," the guidelines take into account whether a defendant is a supervisor or manager of other participants in the role in the offense sections. U.S.S.G. §§ 3B1.1, 3B1.2 (2001). When the guidelines make the presence of a factor a basis for enhancement, then it follows that the absence of that factor has been taken into account by the Sentencing Commission in formulating the guidelines. See United States v. Schlaen, 300 F.3d 1313, 1319 (11th Cir. 2002) (where guidelines provide enhancement for sophisticated concealment, Sentencing Commission must be deemed to have taken into account unsophisticated concealment), pet'n for cert. filed, No. 02-11073 (June 2, 2003). Pressley received a two-point enhancement for his aggravating role of organizing the beating of Stanley Moore in connection with Pressley's cocaine distribution business. Whether or not it is possible to receive an aggravating role adjustment and mitigating role adjustment in the same case, the fact remains that the guidelines take role in the offense into account in setting the sentencing range. Pressley has not shown any reason why the role in the offense provisions of the guidelines fail to account for the small size of his operation. Therefore, the district court did not err in holding that the Sentencing Commission has already adequately accounted for the factor he urges, and a section 5K2.0 departure is not available on this ground.

25

V.

The district court held that conditions of presentence confinement could, in an appropriate case, support a downward departure, but that the facts of Pressley's case were not, as a matter of law, sufficient to support a departure in this case. The district court was correct in holding that conditions of confinement could provide a basis for departure, since this factor was apparently not taken into account by the Sentencing Commission and could be unusual enough to take a case out of the heartland of the applicable guideline. United States v. Carty, 264 F.3d 191, 196 (2d Cir. 2001) (per curiam). Cf. United States v. Dyck, 334 F.3d 736, 742-43 (8th Cir. 2003) (declining to decide whether conditions of confinement can serve as a basis for departure); United States v. Stevens, 223 F.3d 239, 248 n.9 (3d Cir. 2000) (same); United States v. Cardenas, No. 02-3566, 2003 WL 21461824 (7th Cir. June 18, 2003) (unpublished) (question of whether pretrial confinement can be basis for departure unresolved in Seventh Circuit).

The question of whether Pressley made a showing of adverse conditions of presentence confinement that would have been sufficient to warrant a departure is one for which little guidance exists. Of the Courts of Appeals, only the Second Circuit has squarely held that conditions of confinement before sentencing supported a departure. Carty, 264 F.3d at 196. There, Carty fled after pleading

26

guilty and before sentencing, and was caught and jailed in the Dominican Republic, where he was kept in a four-foot by eight-foot cell with three or four other prisoners, he had no light or running water in the cell, he lost forty pounds while in detention, and he suffered various other inhumane conditions. Id. at 193. The district court held that the conditions of Carty's confinement while awaiting extradition would not, as a matter of law, support a departure. The Second Circuit reversed, holding that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures." 264 F.3d at 196. In this Circuit, one district court has granted a downward departure based on presentence confinement conditions where a defendant was raped by a jailer. United States v. Rodriguez, 213 F. Supp. 2d 1298, 1303, amended, 214 F. Supp. 2d 1239, 1241 (M. D. Ala. 2002).[7]

On the other hand, in Dyck the Eighth Circuit reversed a departure for conditions of presentence confinement where no evidence supported the proposition "that the conditions at the Grand Forks County jail facility . . . were so substandard or onerous as to take this case out of the heartland of cases." 334 F.3d at 743. Similarly, in United States v. Brown, 95 F. Supp. 2d 277 (E.D. Pa. 2000),

---

[7]Cf. United States v. Francis, 129 F. Supp. 2d 612, 614-20 (S.D.N.Y. 2001) (granting downward departure where defendant in presentence custody for thirteen months in county correctional center dominated by gangs, with various other security and hygienic inadequacies).

27

a district court stated that it understood it had discretion to depart for conditions of confinement, but that the defendant did not present a "sufficient factual predicate" for departure where the record revealed "crowding, poor food, noise, and an inadequate legal library." Id. at 280. Accord United States v. Sutton, 973 F. Supp. 488, 494-95 (D.N.J. 1997) (holding that neither ten months' length of presentence confinement nor criticism of recreational and food facilities at jail were sufficiently atypical to take case out of heartland), aff'd, 156 F.3d 1226 (3d Cir. 1998) (table).

Pressley testified that he spent six years in presentence confinement, of which five years were spent in USP Atlanta in 23-hour-a-day lockdown. He testified that he had not been outside in five years. These facts are extraordinary, both in the length of presentence confinement and in the conditions. We cannot say that they are insufficient, as a matter of law, to support the two and a half year downward departure the district court said it would consider appropriate if it had the power so to depart.

We therefore REMAND for the district court to exercise its discretion as to whether to depart on the ground of harshness of conditions of presentence confinement. In all other respects, the sentence is AFFIRMED.