[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 14, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-12977
Non-Argument Calendar

_____

D. C. Docket No. 06-00025-CR-T-26-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEBY HUMBERTO LAME-AVILA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 14, 2006)**

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Leby Humberto Lame-Avila appeals his two concurrent 135-month sentences for possession with intent to distribute five kilograms or more of cocaine, in violation of 46 U.S.C. app. § 1903(a), (g), 21 U.S.C. § 960(b)(1)(B)(ii), and conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 46 U.S.C. app. § 1903(a), (g), (j), and 21 U.S.C. § 960(b)(1)(B)(ii), while aboard a vessel subject to the jurisdiction of the United States. On appeal, Lame-Avila argues that the district court erred in denying a minor-role adjustment and asserts his entitlement to a "lesser sentence" under U.S.S.G. §§ 5K2.0 and 5K2.12. For the reasons set forth more fully below, we affirm.

Lame-Avila and seven codefendants were indicted on the above-mentioned charges, to which Lame-Avila pled guilty. According to the presentence investigation report ("PSI"), on January 12, 2006, the U.S. Coast Guard obtained permission to board and search a Panamanian commercial freighter, ultimately finding 50 bales of cocaine, which weighed 1,134 kilograms. Lame-Avila was identified as the first officer. The freighter's route took it from Spain, to Trinidad, to the Dominican Republic, to Guyana, and to Haiti. In the early morning hours of January 12, 2006, the entire crew participated in the transfer of the 50 bales of cocaine from a go-fast vessel off the coast of Venezuela. Lame-Avila was held

accountable for 1,134 kilograms of cocaine at sentencing.

In preparing the PSI, the probation officer assigned a total offense level of 33 and a criminal history category of I, which produced a Guideline imprisonment range of 135-168 months' imprisonment. No adjustment was made for Lame-Avila's role in the offense. Lame-Avila objected to the lack of a minor-role reduction and also sought a "lesser, reasonable sentence" under U.S.S.G. §§ 5K2.0 and 5K2.12. He argued that his Guideline range exceeded Booker's[1] limitation on reasonable sentencing and that he was entitled to a "lesser sentence," under § 5K2.12, due to duress, and, under § 5K2.0, because the Guidelines do not accurately take into account his actions in trying to ground the vessel. Lame-Avila concluded that a "departure" under § 5K2.12 was appropriate and that his actions, "despite the duress and coercion, of trying to quit and later grounding the vessel are actions that are not contemplated by the guidelines and should be considered as mitigating factors in sentencing."

At the sentencing hearing, Lame-Avila testified that he was an experienced seaman who was hired as a first officer for this voyage by Oscar Fernandez from Global Ship Service. He explained that he knew nothing about the drug trafficking until he arrived in Spain. Lame-Avila further described his three attempts to resign

---

[1] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

3

during the course of the voyage, the threats that followed those attempts, and his attempt to run the vessel aground by running into a sunken ship. As to his role in the criminal activities, Lame-Avila testified that he did not organize anything with respect to the drugs, and, other than physically loading the drugs, had no involvement with the scheme. On cross-examination, Lame-Avila admitted that, in Cartagena, he and the rest of the crew threatened to leave the vessel because they had not been paid.

The district court found that Lame-Avila was a sophisticated mariner and overruled his objection regarding a minor-role adjustment based on the amount of drugs involved and the key role a first officer plays on a vessel. The district court denied Lame-Avila's motion for a downward departure under § 5K2.12 on the ground that Lame-Avila was not credible, reasoning that, if he had the courage, after the drugs were on the boat, to threaten to quit because he had not been paid, then he should have had the courage before that time to leave the boat and alert the authorities. With regard to Lame-Avila's motion for a reasonable sentence, the district court construed it as requesting such consideration after it consulted the advisory Guidelines and the 18 U.S.C. § 3553(a) factors. The district court stated that it considered the motion, found that a sentence within the advisory Guideline range was reasonable, and sentenced Lame-Avila to 135 months' imprisonment.

We first consider Lame-Avila's challenge to the district court's denial of a minor-role adjustment. Lame-Avila argues that the district court misapplied the Guidelines by essentially holding that it would not consider a mitigating role due to the quantity of drugs involved. Regarding his entitlement to a minor-role adjustment, he points to his limited role as a mere transporter of the drugs and to the greater role in the offense played by the captain, Fernandez, and, arguably, other people, such as those in charge of the company and Fernandez's superiors.

"[A] district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). Section 3B1.2 of the Sentencing Guidelines provides for a two-level decrease if the defendant was a minor participant in any criminal activity. U.S.S.G. § 3B1.2. Section 3B1.2 permits an adjustment to the Guideline range for a defendant who is substantially less culpable than the average participant. Id., comment. (n.3). A defendant is a minor participant if he is less culpable than most other participants, but his role cannot be described as minimal. Id., comment. (n.5). "The defendant bears the burden of proving his minor role by a preponderance of the evidence." United States v. Boyd, 291 F.3d 1274, 1277 (11th Cir. 2002).

In determining a defendant's mitigating role in the offense, the district court

first "must measure the defendant's role against the relevant conduct for which [he] was held accountable at sentencing" and, second, "may also measure the defendant's role against other participants, to the extent that they are discernable, in that relevant conduct." De Varon, 175 F.3d at 945. Where a drug courier's relevant conduct is limited to his own criminal act, a district court may legitimately conclude that the courier played an important or essential role in that crime. See id. at 942-43. Furthermore, "where the relevant conduct attributed to a defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable." Id. at 941. As to the second prong, the participants must be identifiable or discernable from the evidence and involved in the relevant conduct attributable to the defendant; "[t]he conduct of participants in any larger criminal conspiracy is irrelevant." Id. at 944. "[T]he district court must determine that the defendant was less culpable than most other participants in [his] relevant conduct." Id. Moreover, relative culpability is not necessarily dispositive, as none of the participants may have played a minor or minimal role. Id.

As an initial matter, the record does not reflect that the district court misapplied the Guidelines. Not only have we left open the possibility that the

amount of drugs alone could be dispositive in determining a defendant's role in the offense, see id. at 943, but, in this case, the district court relied both on the amount of drugs and Lame-Avila's role on the vessel.

As to the district court's ultimate finding, we do not find clear error. With respect to the first prong of the De Varon analysis, Lame-Avila was held accountable only for the 1,134 kilograms of cocaine aboard the vessel, which he helped to transfer from the go-fast boat onto his ship. Because his actual and relevant conduct were the same, Lame-Avila cannot demonstrate his entitlement to a minor-role reduction by relying on a broader conspiracy in which he only played a minor part. Id. at 941. Nor, with respect to the second prong of the De Varon analysis, can Lame-Avila rely on the conduct of participants in a larger criminal conspiracy. Id. at 944. With respect to the participants identifiable from the evidence, even if Lame-Avila is less culpable than the captain and Fernandez, who hired him for the trip, Lame-Avila does not argue that he was less culpable than the remaining six crew members on the vessel. Nor does the evidence support such an argument. Lame-Avila served as the first officer and, along with the rest of the crew, he transferred the 50 bales of cocaine from the go-fast boat and onto their ship. Accordingly, Lame-Avila cannot show that he is less culpable than most other participants in the relevant conduct.

With respect to his sentence, Lame-Avila argues that the district court erred by not considering his "request for a lesser sentence" under U.S.S.G. § 5K2.0. He asserts his entitlement to a "lesser sentence pursuant to U.S.S.G. § 5K2.0" because the Guidelines do not take into account his attempts to resign and to ground the vessel and, additionally, his actions were not contemplated by the Guidelines and should be considered as mitigating factors in sentencing. He argues that it was unreasonable for the district court not to consider these circumstances, the district court did not address the issue despite the fact that he raised it in his sentencing memorandum and through his testimony, and the court did not consider these factors at sentencing despite its authority to do so. Lame-Avila also argues that he was entitled to a "lesser sentence pursuant to U.S.S.G. § 5K2.12 for duress." In connection with his argument regarding the denial of a departure for coercion and duress, Lame-Avila also argues that his 135-month sentence is unreasonable under Booker because of that coercion and duress.

We cannot review the district court's discretionary decision not to depart from the Guideline range, but we review de novo the issue of whether the district court erroneously believed that it lacked the authority to depart. United States v. Pressley, 345 F.3d 1205, 1209 (11th Cir. 2003); see also United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005) (reaffirming this rule following

8

Booker). "[W]hen nothing in the record indicates otherwise, we assume the sentencing court understood it had authority to depart downward." United States v. Chase, 174 F.3d 1193, 1195 (11th Cir. 1999).

We review the final sentence imposed by the district court for reasonableness. Winingear, 422 F.3d at 1245. The district court's imposition of a sentence and our reasonableness inquiry are guided by the factors outlined in 18 U.S.C. § 3553(a). United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005); Winingear, 422 F.3d at 1246. The § 3553(a) factors take into account:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

Talley, 431 F.3d at 786. "[T]here is a range of reasonable sentences from which the district court may choose . . . ." Id. at 788. While a sentence within the advisory Guidelines range is not, per se, a reasonable sentence, we ordinarily expect such a sentence to be reasonable. Id. at 787-88. The burden of establishing that the sentence is unreasonable in light of the record and the § 3553(a) factors lies with the party challenging the sentence. Id. at 788.

The district court refused to grant a downward departure under § 5K2.12[2] and nothing in the record indicates that the denial was based on a perceived lack of authority to grant a departure for duress or coercion. Accordingly, we lack jurisdiction to review the district court's refusal to depart under § 5K2.12. Pressley, 345 F.3d at 1209.

The district court did not treat Lame-Avila's arguments regarding § 5K2.0[3] as a separate motion for a downward departure. However, these arguments were contained in Lame-Avila's motion for a reasonable sentence, which the district court considered in determining a reasonable sentence.[4] Thus, to the extent Lame-

---

[2] This section permits a downward departure for a defendant who "committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense[.]" U.S.S.G. § 5K2.12, p.s.

[3] This section describes permitted and prohibited departures under the Guidelines and includes provisions for departures based on circumstances (1) not identified by the Guidelines, and (2) present to a degree not taken adequately into consideration. U.S.S.G. § 5K2.0, p.s.

[4] To the extent that Lame-Avila now argues that the district court erred in not ruling on a motion for a downward departure pursuant to § 5K2.0, we hold that Lame-Avila invited the error. See United States v. Harris, 443 F.3d 822, 823-24 (11th Cir. 2006) ("Where a party invites error, the Court is precluded from reviewing that error on appeal."); United States v. Stone, 139 F.3d 822, 838 (11th Cir. 1998) ("The doctrine of invited error is implicated when a party induces or invites the district court into making an error."). Lame-Avila did not explicitly refer to his § 5K2.0 argument in terms of a departure either in his motion or at sentencing. During sentencing, Lame-Avila's counsel had the following discussion with the district court:

MR. EPIFANIO: Judge, at this time, what I'm asking for —
THE COURT: You're asking for a minor role adjustment?
MR. EPIFANIO: Well, I'm asking for two things.
THE COURT: You're asking me to depart downward for coercion and duress?
MR. EPIFANIO: Yes . . . .

10

Avila argues that the district court failed to take his actions on the boat into consideration  at sentencing, his argument is without merit.

As to the reasonableness of Lame-Avila's sentence, given the district court's rejection of Lame-Avila's testimony and its sentence at the low end of the advisory Guidelines, Lame-Avila cannot meet this burden to establish that his 135-month sentence was unreasonable.

In light of the foregoing, Lame-Avila's sentence is

**AFFIRMED.**

---

As a result of Lame-Avila's comment that he wanted two things, in light of the lack of clarity in his written motion, the context of the conversation in which this comment was made, and the content of Lame-Avila's arguments at sentencing, any error by the district court in construing Lame-Avila's § 5K2.0 argument as part of his motion for a reasonable sentence rather than treating it as a separate motion for a downward departure under the Guidelines was invited.