[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 17, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-14114

_____

D. C. Docket No. 99-00476 CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

MICHAEL KAPELUSHNIK, a.k.a. Michael Kapel,

Defendant-Appellee.

_____

No. 01-14115

_____

D. C. Docket No. 99-00476 CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ALEXANDER VOLIS, a.k.a. Alex Kline,

Defendant-Appellee.

Appeals from the United States District Court
for the Southern District of Florida

**(September 17, 2002)**

Before EDMONDSON, Chief Judge, BLACK and COX, Circuit Judges.

COX, Circuit Judge:

The Government appeals the court's grant of downward sentencing departures to Michael Kapelushnik and Alexander Volis based on their voluntary restitution of some rare American coins following the district court's acceptance of their guilty pleas. We raised *sua sponte* a jurisdictional issue in this case stemming from the fact that, at the time the Government filed its notice of appeal, the district court had not yet fixed the amount of restitution. Because we have satisfied ourselves of jurisdiction, and because we conclude that there was no evidence to support such departures, we vacate Kapelushnik's and Volis's sentences and remand for the imposition of new sentences.

## I.   BACKGROUND AND PROCEDURAL HISTORY

In April 1999, Kapelushnik and Volis traveled to Milwaukee, Wisconsin to attend a rare coin convention. Also at the coin convention was Thomas Reynolds, a dealer and collector of rare American coins. Reynolds displayed a large collection of

coins at the convention, some of which belonged to him and others of which belonged to dealers who had entrusted their collection to Reynolds. After departing the convention, Reynolds traveled to his home in Omaha, Nebraska. Unbeknownst to Reynolds, however, Kapelushnik and Volis were following him. When Reynolds arrived at his home and briefly left his vehicle unattended, Kapelushnik and Volis stole from his vehicle the entire collection of coins that he had displayed at the convention. According to the sentencing court, the value of the stolen coins was $800,000.

After stealing the coins, Kapelushnik and Volis attempted to dispose of their loot by selling the coins to rare coin dealers. One purchaser of the coins recognized them as being part of Reynolds's distinctive collection, and he contacted Reynolds to confirm his suspicion. Reynolds positively identified the coins as his, and the police were notified. Kapelushnik was then arrested as he attempted to sell some of the stolen coins to an undercover officer, and Volis was arrested after selling some of the coins to a dealer in New York.

Subsequently, Kapelushnik and Volis were charged in a multi-count indictment with: (1) conspiracy to transport stolen goods, in violation of 18 U.S.C. § 871; (2) transportation of stolen goods, in violation of 18 U.S.C. § 2314; and (3) the sale and possession of stolen goods, in violation of 18 U.S.C. § 2315. The parties sought to

reach plea agreements whereby Kapelushnik and Volis would receive reduced sentences in exchange for a return of the remaining coins, but Kapelushnik and Volis missed the deadline for returning the stolen coins. The Government then withdrew its plea offer, and Kapelushnik and Volis eventually pleaded guilty to all of the charges in the indictment.

Then, before the court sentenced Kapelushnik and Volis, some of the stolen coins were returned to a New York City police station by a person or persons unknown. Subsequently, Kapelushnik and Volis filed motions for downward sentencing departures under U.S.S.G. § 5K2.0, claiming that they were responsible for arranging the return of the coins via a third party, and that their efforts were so extraordinary that they took the case out of the heartland of the guidelines and warranted downward departures.

At sentencing, the court ruled in favor of Kapelushnik and Volis on their motions for downward departures and granted them a two-level reduction in their sentences. Over objection from the Government, the court concluded that since the guidelines do not expressly mention post-adjudication, voluntary restitution, and since the return of stolen property post-adjudication is extraordinary, the case fell outside of the heartland of the guidelines. The court ultimately sentenced Kapelushnik to eight months' imprisonment, eight months' home confinement, and three years of

supervised release. The court sentenced Volis to seven months' imprisonment, seven months' home confinement, and three years of supervised release.

Also at sentencing, the court ordered both defendants to pay restitution, but the court deferred for a later hearing its ruling on the amount of restitution owed. After sentencing but before the restitution hearing, the court entered the judgments of conviction, and the Government filed its notice of appeal on the downward departures. We *sua sponte* raised a jurisdictional issue stemming from the fact that, at the time the Government filed its notice of appeal, the court had not yet fixed the amount of restitution. The amount of restitution remains unsettled.

## II.    CONTENTIONS OF THE PARTIES

With regards to the jurisdictional issue, both parties originally contended that we lacked jurisdiction over this appeal. Then, following our decision in *United States v. Maung*, 267 F.3d 1113 (11th Cir. 2001), which sheds light on this issue, the Government amended its response and argued that the court's failure to set restitution within the statutory limitations period rendered the restitution orders unenforceable and the judgments of conviction final and appealable as of the date they were entered. Kapelushnik and Volis have not addressed the effect of *Maung* on jurisdiction.

On the merits of the appeal, the Government contends that the court erred as a matter of law in determining that post-adjudication, voluntary restitution forms a

5

permissible basis for a downward departure under § 5K2.0. The Government also contends that, even if such a departure is permissible, there is no evidence in the record to support the court's finding that Kapelushnik and Volis were responsible for the return of stolen coins. Kapelushnik and Volis, on the other hand, contend that since the guidelines do not address post-adjudication, voluntary restitution, the court did not abuse its discretion in granting them downward departures.

## III.    STANDARD OF REVIEW

On the downward departure issue, we review the sentencing court's factual findings for clear error and the application of the Sentencing Guidelines to those facts de novo. *See United States v. Trujillo*, 146 F.3d 838, 847 (11th Cir. 1998).

## IV.    DISCUSSION

### A.    *Jurisdiction*

Before we can resolve the downward departure issue, we must first satisfy ourselves of jurisdiction. Title 18 U.S.C. § 3664(d)(5) governs the procedure for the issuance and enforcement of orders of restitution. Section 3664(d)(5) provides that, when the amount of restitution is not ascertainable at the time of sentencing, the district court may set a date for the final determination of that amount not to exceed 90 days after sentencing. In *United States v. Maung*, 267 F.3d 1113, 1121 (11th Cir. 2001), we interpreted the plain language of § 3664(d)(5) as requiring district courts

6

to determine the amount of restitution within the 90-day limitations period. Where, as here, the district court fails to make such a determination within the 90-day limitations period, the judgment of conviction becomes final and contains no enforceable restitution provision. *See id; United States v. Jolivette*, 257 F.3d 581, 584 (6th Cir. 2001) ("[W]e hold that when the 90-day clock runs out, the judgment of conviction and sentence, including the restitution provision, becomes final by operation of statute."). Thus, since in this case the district court failed to determine the amount of restitution within 90 days of sentencing, the judgments of conviction became final by operation of law, and the judgments contain no enforceable restitution provision. And, once the judgments of conviction became final, the Government's premature notice of appeal ripened into an effective notice as of that date. *See United States v. Curry*, 760 F.2d 1079, 1079-80 (11th Cir. 1985) (holding that, where defendant filed notice of appeal after verdict but before sentencing, "premature notice of appeal is effective to perfect an appeal as of the date the sentence is entered as the judgment.").

What is complicated about this case is that the district court refrained from setting the amount of restitution within the 90-day limitations period because it believed that the Government's notice of appeal — which was filed prematurely before the expiration of the 90-day limitations period — divested it of the jurisdiction

to do so.  While we understand how the district court might have arrived at this conclusion, it nonetheless was in error.  Our precedent holds that a premature notice of appeal does not divest the district court of jurisdiction over the case.  *See United States v. Hitchmon*, 602 F.2d 689, 692 (5th Cir. 1979) (en banc) ("We are persuaded that filing a notice of appeal from a nonappealable order should not divest the district court of jurisdiction and that the reasoning of the cases that so hold is sound.");[1] *accord Euziere v. United States*, 266 F.2d 88, 91 (10th Cir. 1959) ("An attempt to appeal a non-appealable order remains just that, an attempt. It is a nullity and does not invest the appellate court with jurisdiction, and consequently does not divest the trial court of its jurisdiction.").  In fact, our holding in *Maung* — that the district court's failure to set the amount of restitution within the 90-day limitations period renders the restitution provision unenforceable — implicitly recognizes that the district court retains jurisdiction to set the amount of restitution during the 90-day limitations period.  Thus, since the judgments of conviction are now final, and since the Government's notice of appeal ripened into a timely notice, we have jurisdiction to address the merits of this appeal.

---

[1]     This court adopted as binding precedent all decisions of the Fifth Circuit handed down prior to October 1, 1981.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

8

In future cases, district courts would be well advised not to enter the written judgment of conviction until the amount of restitution has been fixed.[2] The parties would also be well advised not to file a notice of appeal until such time or until the expiration of the 90-day limitations period — i.e. when the judgment of conviction becomes final. We turn now to the merits.

## B. *Downward Departures*

The court granted Kapelushnik and Volis downward sentencing departures under § 5K2.0 of the sentencing guidelines, which permits the court to impose a sentence outside the range established by the applicable guideline when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . ." U.S. Sentencing Guidelines Manual § 5K2.0 (1998). In granting such a departure, the sentencing court must determine: "(1) whether any factor makes the case atypical, meaning that it takes the case out of the 'heartland' of cases involving the conduct described in the applicable guideline, and (2) whether that factor should result in a different sentence." *United States v. Regueiro*, 240 F.3d 1321, 1324 (11th

---

[2]    Once the written judgment is entered, the time period for filing a notice of appeal commences. *See generally,* Fed. R. App. P. 4(b); *see also United States v. Rothseiden*, 680 F.2d 96, 97 (11th Cir. 1982) (explaining that period for filing notice of appeal begins to run "from the entry in the criminal docket of the judgment . . . (as opposed to running from the rendition of the judgment . . . ).").

Cir. 2001). Of course, the factor which removes the case from the heartland of the guidelines and warrants a downward departure must be supported by evidence in the record. *See e.g. United States v. Onofre-Segarra*, 126 F.3d 1308, 1312 (11th Cir. 1997) (vacating sentence where evidence did not support grant of downward departure under § 5K2.0).

The factor relied upon by the court in granting Kapelushnik and Volis downward sentencing departures was their post-adjudication, voluntary restitution of some of the stolen coins. Implicit in the court's grant of the downward departures is a finding that Kapelushnik and Volis were responsible — either directly or indirectly — for the return of those coins. There is no evidence in the record, however, to support such a finding. The defendants do not point us to any evidence in the record to support a finding that they were responsible for the return of some of the stolen coins, and we find no such evidence in our review of the record. The only grounds on which the court might have relied in making such a finding are the allegations by defense counsel at sentencing, but as we have held previously, such allegations are an insufficient basis upon which to grant a downward departure. *See United States v. Tomono*, 143 F.3d 1401, 1404 (11th Cir. 1998) ("[T]he arguments of counsel are generally an insufficient basis upon which to depart from the guidelines."); *Onofre-Segarra*, 126 F.3d at 1310-11 (vacating sentence where court based downward

10

departure on arguments of counsel at sentencing). Thus, the court committed reversible error in granting Kapelushnik and Volis downward departures.

Since we conclude that there is no evidence to support the court's finding that Kapelushnik and Volis were responsible for the return of some of the stolen coins, we need not address the Government's argument that the court erred as a matter of law in determining that post-adjudication, voluntary restitution forms a permissible basis for a downward departure under § 5K2.0.

## V. CONCLUSION

Because the record does not support a finding that Kapelushnik and Volis were responsible — either directly or indirectly — for the return of some of the stolen coins, the court erred in granting them downward departures for their post-adjudication, voluntary restitution of those coins. We therefore vacate Kapelushnik's and Volis's sentences and remand for the imposition of new sentences without such departures.

VACATED AND REMANDED.

EDMONDSON, Chief Judge, concurs in the result.