[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 20, 2011
JOHN LEY
CLERK

Nos. 10-15139, 10-15146
Non-Argument Calendar

_____

D.C. Docket Nos. 1:09-cr-20623-JAL-1
1:10-cr-20124-JAL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RUBEN RODRIGUEZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(October 20, 2011)

Before EDMONDSON, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Ruben Rodriguez appeals his 132-month sentence imposed after he pleaded

guilty and was convicted of crimes involving theft of hospital patients' personal

information, which he used for monetary gain. First, Rodriguez contends that the district court erred when it applied a 2-level enhancement for the use of "sophisticated means." Second, he contends that the district court engaged in impermissible double counting by both applying a 2-level enhancement for obstruction of justice and denying a 2-level reduction for acceptance of responsibility based on the same conduct. Third, he contends that the district court abused its discretion in applying a 7-level upward departure. Finally, he contends that his sentence is procedurally unreasonable for other reasons and is also substantively unreasonable.

I.

Beginning in 1995 Rodriguez illegally obtained information from patients' medical records, which he used to contact the patients to refer them to personal injury lawyers and medical clinics. Rodriguez used two separate schemes for obtaining the information. The first one involved Rodriguez and Rebecca Garcia, an ultrasound technician at Jackson Memorial Hospital. Beginning in December 2006 Rodriguez paid her $1,000 per month to provide him with the patient information of trauma patients admitted to Jackson Memorial as a result of car accidents, "slip and fall" injuries, gunshot wounds, and assaults. Rebecca Garcia

accessed the records of approximately 3,360 of those patients through the Jackson Memorial computer system.

In the second scheme, Daisy Garcia sold Rodriguez the personal information of individuals transported to the hospital by American Medical Response ambulances. Rodriguez paid her $25 for each person who later contacted one of the lawyers or medical clinics working with him. Between 1995 and 2008 Rodriguez paid Daisy Garcia $59,800.

The clinics and lawyers paid Rodriguez kickbacks from lawsuits, settlements, or funds paid by insurance carriers for the patients whose information he supplied. Rodriguez did not receive payment directly. Instead one of two shell companies he incorporated—Pro-Caribbean Enterprises or Miami-Dade Services—received the payments and he got the funds from them. One clinic alone, Asclepius Medical, wrote checks totaling more than $38,000 to Pro-Caribbean.

Based on the first scheme, a grand jury indicted Rodriguez in 2009 on multiple counts including the two he pleaded guilty to, aggravated identity theft and conspiracy to commit these offenses: fraud in connection with computers, aggravated identity theft, and wrongful disclosure of health information. The government later discovered that Rodriguez had attempted to obstruct the grand

3

jury investigation by providing Asclepius Medical with bogus invoices totaling more than $38,000 and telling the owner of Asclepius to give them to the grand jury as evidence that Pro-Caribbean and Asclepius were conducting legitimate business. As a result, a superceding indictment added a count charging him with obstruction of justice. Based on the second scheme, a grand jury indicted Rodriguez in 2010 on multiple counts including the one he pleaded guilty to, conspiracy to commit these offenses: fraud in connection with computers and aggravated identity theft.

There were two separate indictments because initially there were two separate cases, although the cases were later consolidated for sentencing. Under an oral plea agreement, Rodriguez pleaded guilty to one count of conspiracy and one count of aggravated identity theft as charged in the 2009 indictment and one count of conspiracy as charged in the 2010 indictment. At the sentence hearing the government moved to dismiss all remaining counts, and the district court granted that motion.

The presentence investigation report grouped together under U.S.S.G. § 3D1.2(d) the first two object offenses of the conspiracy count in the 2009 indictment and the first object offense of the conspiracy count in the 2010 indictment. As required by § 3D1.1(b)(2), the PSI applied the offense guideline

4

for the count producing the highest offense level—conspiracy to commit fraud in connection with computers. The aggravated identity theft count from the 2009 indictment was not grouped together with the others. The base offense level for a conspiracy offense is the base offense level for the object offense, § 2X1.1(a), thus the PSI applied a base offense level of 6, the level for fraud in connection with computers. § 2B1.1(a)(1).

The PSI also applied several enhancements: a 2-level enhancement for use of "sophisticated means" under § 2B1.1(b)(9)(C); a 2-level enhancement for obstruction of justice under § 3C1.1; a 4-level enhancement because the offense "involved 50 or more victims" under § 2B1.1(b)(2)(B); a 2-level enhancement because the offense "involved an intent to obtain personal information" under § 2B1.1(b)(15); and a 4-level enhancement because Rodriguez was the "organizer . . . of a criminal activity" under § 3B1.1(a). All of that yielded an adjusted offense level of 20 and a guidelines range of 33 to 41 months, plus a mandatory additional 24 months for the aggravated identity theft count under 18 U.S.C. § 1028A(a)(1). The PSI also noted that an upward departure could be considered because the offense involved the theft of personal information and involved theft from a personal computer under § 2B1.1 cmt. n.19(A)(ii) and (v).

Rodriguez objected to the 2-level sophisticated means enhancement, arguing the conduct was not especially complex or intricate.  He also argued that the PSI should have applied a 2-level reduction for acceptance of responsibility under § 3E1.1(a) because he had pleaded guilty and had submitted a statement accepting responsibility.  He further requested a downward variance based on his on-going health problems.

At the sentence hearing, the district court overruled Rodriguez's objection to the 2-level "sophisticated means" enhancement, finding that Pro-Caribbean was a shell corporation used to receive and launder ill-gotten proceeds.  The court also overruled Rodriguez's objection that the PSI should have applied a 2-level reduction for acceptance of responsibility, finding that Rodriguez obstructed justice when he supplied forged invoices to Asclepius Medical.  The court also found that Rodriguez's case was not an extraordinary case where both § 3C1.1 and § 3E1.1(a) could apply and that Rodriguez's conduct during the grand jury investigation did not clearly demonstrate acceptance of responsibility.  Acting on its own motion, the court increased the 4-level enhancement under § 2B1.1(b)(2)(B) to a 6-level enhancement under § 2B1.1(b)(2)(C), finding that there were more than 250 victims.

Furthermore, the district court found the guidelines range substantially understated the seriousness of Rodriguez's offenses because they had involved the substantial invasion of a privacy interest of more than 3,000 victims and had also involved information stolen from a protected computer to further broader criminal purposes. For those reasons, the court granted the government's motion for an upward departure and imposed a 7-level increase. The new adjusted offense level of 29 resulted in a guidelines range of 87 to 108 months, plus 24 months for the aggravated identity theft count. After considering the 18 U.S.C. § 3553(a) factors, the court imposed a total sentence of 132 months.

## II.

Rodriguez contends the district court erred by applying a 2-level "sophisticated means" enhancement under § 2B1.1(b)(9)(C). "We review the district court's findings of fact related to the imposition of sentencing enhancements, including a finding that the defendant used sophisticated means, for clear error." United States v. Ghertler, 605 F.3d 1256, 1267 (11th Cir. 2010) (quotation marks omitted). We review "a district court's application of the guidelines to the facts with due deference," which is "tantamount to clear error review." United States v. Rothenberg, 610 F.3d 621, 624 (11th Cir. 2010) (citations omitted). "Review for clear error is deferential, and we will not disturb

a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." Id. (quotations marks, alteration, and citation omitted).

The district court did not clearly err in finding that Rodriguez used a shell corporation to receive and launder the proceeds of his fraudulent schemes. At the sentence hearing Rodriguez conceded that the shell corporation had no legitimate purpose other than to receive and disburse the kickbacks. Furthermore, the use of a shell corporation to hide assets and transactions is specifically identified in the guidelines commentary as an example of sophisticated means, § 2B1.1, cmt. n.8(b), and that commentary is authoritative. See United States v. Jordi, 418 F.3d 1212, 1216 (11th Cir. 2005) ("Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." (quotation marks and citation omitted)). Thus, applying the 2-level enhancement under § 2B1.1(b)(9)(C) was not error.

## III.

Next, Rodriguez contends granting a 2-level enhancement for obstruction of justice and refusing to grant a 2-level reduction for acceptance of responsibility based on the same conduct was impermissible double counting. "We review de

8

novo a claim of double counting." United States v. Dudley, 463 F.3d 1221, 1226 (11th Cir. 2006).

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." Id. at 1226–27 (quotation marks omitted). "Double counting a factor during sentencing is permitted if the Sentencing Commission . . . intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." Id. at 1227 (quotation marks omitted).

Under § 3E1.1(a) of the guidelines, a defendant may receive a 2-level reduction if he "clearly demonstrates acceptance of responsibility for his offense." The commentary provides: "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 apply." § 3E1.1 cmt. n.4.

Here, the district court granted the 2-level increase for obstruction of justice under § 3C1.1 based on the forged invoices given to Asclepius Medical. The Guideline commentary specifically states that a § 3C1.1 enhancement will

ordinarily rule out a § 3E1.1 reduction unless the case is "extraordinary." The district court specifically found Rodriguez's case was not "extraordinary," and in his briefs to this Court Rodriguez points to nothing that establishes it was. Accordingly, the district court did not engage in impermissible double counting. See Dudley, 463 F.3d at 1227.

IV.

Rodriguez further contends that the district court abused its discretion by applying a 7-level upward departure. On a "departure issue, we review the sentencing court's factual findings for clear error and the application of the Sentencing Guidelines to those facts de novo." United States v. Kapelushnik, 306 F.3d 1090, 1093 (11th Cir. 2002) (emphasis added). "[B]ut we review the extent of a departure only for abuse of discretion." United States v. Crisp, 454 F.3d 1285, 1288 (11th Cir. 2006).

Upward departure may be warranted if the offense level "substantially understates the seriousness of the offense." U.S.S.G. § 2B1.1 cmt. n.19(A). The commentary provides a "non-exhaustive list of factors that the court may consider in determining whether a departure is warranted," including:

> (ii) The offense caused or risked substantial non-monetary harm. For example, the offense . . . resulted in a substantial invasion of a privacy

interest (through, for example, the <u>theft of personal information such as medical</u> . . . <u>records</u>).

. . . .

(v) In a case involving stolen information from a "protected computer", [sic] as defined in 18 U.S.C. § 1030(e)(2), the defendant sought the stolen information to further a broader criminal purpose.

§ 2B1.1 cmt. n.19(A)(ii), (v) (emphasis added).  A "protected computer" includes a computer used in or affecting interstate or foreign commerce or communication. 18 U.S.C. § 1030(e)(2)(A), (B).  The district court based its upward departure on those two factors identified in the commentary and one unlisted factor—the large number of victims.

First, there was no clear error in the district court's factual findings.  The presentence investigation report noted that the Jackson Medical scheme involved accessing the medical records of 3,360 patients and the theft of those records, which included patient names, contact information, and admitting diagnoses. Rodriguez did not object to these facts and, thus, admitted them.  <u>United States v. Wade</u>, 458 F.3d 1273, 1277 ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.").  Further, Rodriguez has abandoned any objection to the characterization of the Jackson Medical computers as being used in or affecting interstate commerce because he failed to raise the issue in either the district court or in his initial brief to this

11

Court.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330–1331 (11th Cir. 2004).

The district court also correctly applied the departure provision.  Theft of medical records and theft of information from a protected computer are specifically listed grounds for departure.  See U.S.S.G. § 2B1.1 cmt. n.19(A)(ii), (v).

Finally, Rodriguez argues that the extent of the departure—7 levels—was an abuse of discretion because the grounds for departure had already been accounted for by enhancements.  However, no enhancement accounted for the substantial invasion of privacy stemming from the fact that the stolen records involved patients' medical information.  And no enhancement accounted for the theft from a protected computer to further a broader criminal purpose.  Therefore the district court's concerns were not fully accounted for by other guidelines provisions, and imposing a 7-level upward departure was not an abuse of discretion.

V.

Lastly, Rodriguez contends his sentence is unreasonable.  "We review the reasonableness of a sentence for abuse of discretion using a two-step process."

United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).  We first determine "whether the district court committed any significant procedural error," and we then determine "whether the sentence is substantively reasonable under the totality of the circumstances."  Id.  "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors."  Id.

A.

"A sentence may be procedurally unreasonable if the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence."  United States v. Gonzalez, 550 F.3d 1319, 1323 (11th Cir. 2008).  We have already addressed and rejected Rodriguez's contentions that the district court committed various errors in calculating his guidelines range.  Rodriguez also contends that the district court failed to properly consider the 18 U.S.C. § 3553(a) factors.

The district court stated that it considered the § 3553(a) factors and found the sentence appropriate in light of the seriousness of Rodriguez's offenses, the sustained conspiracy over a period of years, the need to promote respect for the

13

law, the need to provide just punishment, and the need to afford adequate general and specific deterrence.  There is no requirement that the district court specifically detail findings as to the individual factors.  See United States v. Irey, 612 F.3d 1160, 1195 (11th Cir. 2010) (en banc) ("No member of this Court has ever before indicated that a sentencing judge is required to articulate his findings and reasoning with great detail or in any detail for that matter.").  The court did not impose Rodriguez's sentence in a procedurally unreasonable manner.

B.

To determine if a sentence is substantively unreasonable, "we must, as the Supreme Court has instructed us, consider the totality of the facts and circumstances."  Irey, 612 F.3d at 1189.  "[O]rdinarily we . . . expect a sentence within the Guidelines range to be reasonable."  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).  We will vacate a sentence for substantive unreasonableness "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  Irey, 612 F.3d at 1190 (quotation marks omitted).

14

Here, the totality of the circumstances, including the fact the sentence was within the guidelines range, the seriousness of Rodriguez's offenses, the fact that the conspiracy lasted for a period of years, and the significant invasion of privacy arising from the theft of medical records, supports the 132-month sentence the district court imposed. Rodriguez's sentence is substantively reasonable.

**AFFIRMED.**