WILSON, Circuit Judge:
This case requires us to answer a jurisdictional question left open by the Supreme Court in Dolan v. United States, 560 U.S. 605, 130 S.Ct. 2533, 177 L.Ed.2d 108 (2010). Specifically, we must determine whether we have jurisdiction to hear appeals from judgments sentencing a defendant to a term of imprisonment and indicating that restitution will later be ordered but deferring determination of the specific amount. For reasons discussed below, we hold that, regardless of whether a final judgment reflecting the amount of restitution has been entered, a judgment imposing a term of imprisonment is “ ‘freighted with sufficiently substantial indicia of finality to support an appeal.’ ” Id. at 617, 130 S.Ct. at 2542 (quoting Corey v. United States, 375 U.S. 169, 174-75, 84 S.Ct. 298, 302-03, 11 L.Ed.2d 229 (1963)). Because the judgment at issue in this appeal sentenced the Appellant, Michael Muzio, to 163 months in prison, we have jurisdiction.
*1245 Accordingly, we must address the issues Muzio raises on appeal. Muzio makes the following claims: (1) the evidence presented at trial was insufficient to support a conviction; (2) the district court abused its discretion and violated Federal Rule of Evidence 404(b) by admitting evidence of Muzio’s prior conviction; (3) the district court abused its discretion by imposing a substantively unreasonable 163-month prison sentence; (4) the district court erred in concluding that the offense “involved sophisticated means,” which led to an erroneous two-level increase in Muzio’s offense level pursuant to U.S.S.G. § 2Bl.l(b)(10); (5) the district court clearly erred in concluding that Muzio was “an organizer or leader” in the offense, which led to an erroneous four-level increase in Muzio’s offense level pursuant to U.S.S.G. § 3Bl.l(a); (6) the district court clearly erred in concluding that Muzio abused a position of trust, which led to an erroneous two-level increase in Muzio’s offense level pursuant to U.S.S.G. § 3B1.3. With the benefit of oral argument and after careful review of the record and the parties’ briefs, we conclude that these claims lack merit and do not warrant further discussion. Therefore, we affirm.
I.
To understand why we have jurisdiction to hear the instant appeal, it is necessary to briefly summarize the proceedings below. Muzio was convicted in the Southern District of Florida on one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; two counts of substantive wire fraud, in violation of 18 U.S.C. § 1343; six counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a); and two counts of making false statements to agents of the SEC and the FBI, in violation of 18 U.S.C. § 1001(a)(2). The district court entered a judgment on July 1, 2010 (July Judgment), sentencing Muzio to 163 months in prison, three years of supervised release, and $1,100 in assessments. The July Judgment indicated that restitution would be ordered but stated that “[t]he determination of restitution is deferred for [ninety] days. An Amended Judgment in a Criminal Case (AO 2Jp5C) will be entered after such determination.” On July 15, 2010, Muzio filed a notice of appeal from the July Judgment.[1]
The district court requested that a magistrate judge prepare a report and recommendation on the appropriate restitution award. Before the magistrate judge, the parties agreed on the amount of restitution Muzio should pay. On October 21, 2010— 114 days after the sentencing hearing — the magistrate judge filed a report recommending that Muzio be ordered to pay $631,976.06. On November 3, 2010 — 127 days after the sentencing hearing — the District Court entered two orders (collectively referred to as the November Order) adopting the report and recommendation and ordering Muzio to pay $631,976.06 in restitution. The November Order also directed the government to prepare and submit a final judgment to the district court. To date, the government has not done so. Consequently, an amended final judgment reflecting the amount of restitution to be paid has not been entered as required by the July Judgment. The instant appeal, filed on July 15, 2010, is an appeal from *1246 the July Judgment, not the November Order.
II.
Thus, the question before us is whether judgments, like the July Judgment, that defer the issue of restitution can nevertheless be final for appellate jurisdictional purposes. Under the law of this circuit as it existed prior to Dolan, an appeal from a sentencing judgment that deferred the issue of restitution was premature — that is, the judgment was not final and appeal-able — until one of two possible events occurred, thus causing the appeal to ripen. The district court had to either (1) order restitution, or (2) lose the power to do so. See United States v. Kapelushnik, 306 F.3d 1090, 1094 (11th Cir.2002). Prior to Dolan, we held that the second ripening event would occur ninety days after entry of the initial judgment based on our interpretation of 18 U.S.C. § 3664(d)(5). See United States v. Maung, 267 F.3d 1113, 1122 (11th Cir.2001), abrogated by Dolan, 560 U.S. 605,130 S.Ct. 2533. We reasoned that because the statute states that a district “court shall set a date for the final determination of [restitution], not to exceed 90 days after sentencing,” district courts lost the power to order restitution after that deadline. Id. Thus, one of the two ripening events would occur, at the latest, ninety days after initial sentencing.
Applying the Kapelushnik framework after Dolan creates injustice and potentially, a constitutional violation. In Dolan, the Court held that “[t]he fact that a sentencing court misses the statute’s 90-day deadline ... does not deprive the court of the power to order restitution.” 560 U.S. at 611, 130 S.Ct. at 2539. Thus, Dolan deeply affected one of the two ripening events: before Dolan, the district court necessarily lost the power to order restitution ninety days after the defendant was initially sentenced; after Dolan, the district court could delay indefinitely. The other ripening event under the Kapelush-nik framework — the district court ordering restitution — is also not subject to a deadline. Consequently, in light of Dolan, our framework creates the possibility that defendants whose initial sentences include a deferred order of restitution will be denied their right to appeal indefinitely, as both events triggering appellate jurisdiction may fail to occur.
Meanwhile, defendants sentenced under initial judgments sit in prison. And this case proves that the prospect of an indefinite delay under the Kapelushnik framework is not merely a hypothetical fear. Muzio has been imprisoned pursuant to the July Judgment for nearly four years, and an amended final judgment ordering restitution has yet to be entered. Thus, under Kapelushnik, Muzio’s premature appeal arguably has not ripened even though nearly four years have passed since the judgment sending Muzio to prison was entered. The Dissent tells Muzio that this remains the law even after Dolan and that, as a result, Muzio must wait to appeal until the prosecution does what the district court told it to do in November of 2010— prepare an amended final judgment reflecting the court’s order of restitution so that Muzio’s appeal can finally ripen. This would give district courts — and even worse in an adversarial system, the prosecution — the power to indefinitely delay a defendant’s right to appeal.
Whether Muzio has a right to appeal from the July Judgment — that is, whether we have jurisdiction to hear his appeal— ultimately turns on whether a judgment imposing a term of imprisonment but leav *1247 ing restitution unresolved is “final.” See 28 U.S.C. § 1291 (noting that appellate courts “shall have jurisdiction of appeals from all final decisions of the district courts” (emphasis added)).[2] The Dissent assumes that the July Judgment is not final — referring Muzio’s appeal from that judgment as “premature” — because a judgment cannot be “final” for appellate jurisdictional purposes until the district court acts on its intention to order restitution.[3]
The Supreme Court explicitly refused to make this assumption, however, stating that it did “not mean to imply that we accept the ... premise ... that a sentencing judgment is not ‘final’ until it contains a definitive determination of the amount of restitution.” Dolan, 560 U.S. at 617, 130 S.Ct. at 2542. The Dissent reads as if that is exactly what the Court implied. We see no reason to do exactly what the Supreme Court explicitly said it would not do, particularly when defendants would be indefinitely deprived of their right to appeal as a result. In Dolan, the Court recognized the possibility of this injustice and explained in dicta why that problem would not materialize. Ultimately, however, the Dolan Court had to leave the “matter[] for another day.” Id. at 618, 130 S.Ct. at 2543. That day has now arrived, and we pick up where the Supreme Court left off.
III.
Based on Supreme Court precedent, we conclude that the July Judgment is final for purposes of appeal because it sentenced Muzio to a term of imprisonment. See Dolan, 560 U.S. at 617, 130 S.Ct. at 2542 (explaining that “a judgment ... imposing] ‘discipline’ may ... be ‘freighted with sufficiently substantial indicia of finality to support an appeal’ ” (quoting Corey, 375 U.S. at 174-75, 84 S.Ct. at 302-03)). The Court in Dolan noted that several “strong arguments favor the appealability of the initial judgment irrespective of the delay in determining the restitution amount.” Id. Specifically, the Court noted that allowing a defendant to appeal from an earlier or initial sentencing judgment “makes sense, for otherwise the statutory 90-day restitution deadline, even when complied with, could delay appeals for up to 90 days. Defendants, that is, would be forced to wait three months before seeking review of their conviction when they could ordinarily do so within 14 days.” Id. at 618, 130 S.Ct. at 2543. In other words, the Court would likely not tolerate even a ninety-day delay of a defendant’s right to appeal, let alone the indefinite delay that would result if we refused to hear appeals until restitution *1248 has been resolved.[4]
We do not rely merely on the persuasive dicta in Dolan. Binding precedent from the Supreme Court’s decision in Corey is directly on point. In Corey, the district court committed the defendant to the Attorney General’s custody for several months for a diagnostic study but delayed pronouncing a final sentence until receiving a report from the Bureau of Prisons. 375 U.S. at 170, 84 S.Ct. at 300. Despite the fact that the district court had not imposed the final sentence it said would later follow, the Supreme Court held that a final appealable judgment existed. Id. at 173, 84 S.Ct. at 301. The Court explained that “the imposition of such a mandatory three — or six-month term of imprisonment before the defendant could file an appeal might raise constitutional problems of significant proportions.” Id., 84 S.Ct. at 302.[5] The Court further reasoned that a sentence imposed “after the whole process of the criminal trial and determination of guilt has been completed, sufficiently satisfies conventional requirements of finality for purposes of appeal. The litigation is complete as to the fundamental matter at issue — the right to convict the accused of the crime charged in the indictment.” Id. at 174, 84 S.Ct. at 302 (internal quotation marks omitted).
There, as here, the same potential bar to appellate jurisdiction existed: the district court’s retention of power over some issues in the case and the need for the court to enter another judgment. That potential bar was held to be an insufficient basis for denying appellate review because the right to convict had been established and because a term of imprisonment had been imposed. Those two facts are also true here, and if anything, the facts here are more extreme. In Corey, the provisional term of imprisonment prior to appellate review was three to six months, while the term here is indefinite. More than forty months have already been served. Thus, here, as in Corey, finality has been established notwithstanding the fact that tasks remain to be completed by the district court.
*1249 Corey is not alone. The Court has said elsewhere that “certainly when discipline has been imposed, the defendant is entitled to review.” Korematsu, 319 U.S. at 434, 63 S.Ct. at 1125. The Court has also plainly held that the sentence is the judgment for purposes of permitting appeal. “Final judgment in a criminal case means sentence. The sentence is the judgment.” Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937); see also Cobbledick v. United States, 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940) (explaining that even though delays and piecemeal litigation may result, an interlocutory appeal in a criminal case is permissible when the alternative is to force a party to “abandon [his] claim or languish in jail”). Congress has also explicitly recognized that some judgments of conviction sentencing a defendant to a term of imprisonment are final notwithstanding the prospect of subsequent modification. See 18 U.S.C. § 3582(b). Here, the July Judgment disciplined Muzio by sentencing him to prison for 163 months, and accordingly, the July Judgment is final.[6]
This precedent also counsels directly against the Dissent’s insistence that until the November Order is entered in an amended final judgment, the July Judgment remains provisional and thus unappealable. Whatever differences exist between the words “provisional” and “final” in the colloquial sense, the Court in Dolan — extrapolating from Corey — contemplated immediate appealability of judgments when “the sentencing court made clear ... that it would order restitution, leaving open ... only the amount.” 560 U.S. at 608, 130 S.Ct. at 2537. That is all that was left open by the July Judgment.[7] By explaining that a judgment sentencing a defendant to prison is sufficiently final to support an appeal even if the district court’s role in the case is not entirely complete, the Court is telling us that there is no need to engage in a semantic debate over the difference between a provisional judgment and a final one. Notwithstand *1250 ing the fact that a district court has yet to enter a judgment finalizing the amount of restitution, the Court went on to say, “[We have] previously said that a judgment that imposes ‘discipline’ may still be ‘freighted with sufficiently substantial indicia of finality to support an appeal.’ ” Id. at 617, 130 S.Ct. at 2542 (quoting Corey, 375 U.S. at 174-75, 84 S.Ct. at 302-03). Indeed, in Corey, the provisional sentence left far more to be done by the district court than remains to be done here. While it is unlikely here that any aspect of the initial judgment will change as a result of the court’s subsequent order of restitution, in Corey, the district court clearly intended to — and in fact did — substantially modify the initial sentence. 375 U.S. at 172, 84 S.Ct. at 301. Notwithstanding the provisional nature of a sentence, if it deprives a defendant of his freedom, it is sufficiently final to support an appeal. Id. at 175, 84 S.Ct. at 303.[8]
Thus, following the Supreme Court’s dicta in Dolan and applying its holding in Corey, we conclude that a judgment imposing a prison sentence and restitution but leaving the specific amount of restitution unsettled is immediately appealable. This may lead to a bifurcation of some defendants’ cases. We have dealt with this situation before. If a subsequent judgment is entered ordering restitution, the defendant may separately appeal that order, and the appeal may be heard separately or consolidated with the initial appeal if that has not yet been resolved. See Dolan, 560 U.S. at 617-19, 130 S.Ct. at 2542-43 (citing United States v. Stevens, 211 F.3d 1, 4-6 (2d Cir.2000) and Maung, 267 F.3d at 1117, as examples of cases where separate appeals were filed following sentencing and a subsequent order of restitution); see also United States v. Frederick, 382 Fed.Appx. 58, 59 (2d Cir.2010) (noting that Dolan “indicated] in dicta that judgments containing restitution components that lack specific dollar figures are final judgments that may be appealed from”), cert. denied, — U.S. —, 132 S.Ct. 282, 181 L.Ed.2d 169 (2011). The Supreme Court has also recognized that if the defendant chooses to do so, he may avoid bifurcation of his appeal by waiting until restitution has been resolved to appeal. See Corey, 375 U.S. at 175, 84 S.Ct. at 303 (holding that defendants have the option to appeal immediately from an initial sentencing judgment or to wait and appeal from both judgments only after the second has been entered). Here, Muzio filed a timely notice of appeal from the July Judgment, so we must consider that appeal on the merits.[9]
*1251 IV.
We do not lightly set aside the Dissent’s position, as several arguments could be raised to support that view. First, the Dissent is consistent with the desire to avoid piecemeal litigation that could result from the bifurcated appeal process we adopt here. Second, the Dissent comports with a colloquial understanding of the word “final,” which one typically thinks of in binary terms (something either is or is not final; “sufficiently final” is an odd phrase). Further, if one accepts the Dissent’s assumption that when the district court retains the power to order restitution, it necessarily retains jurisdiction over the entire case, another potential reason to side with the Dissent appears. Namely, the Dissent’s approach would be consistent with the “general[ ] understanding] that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously.” Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam).[10] Ensuring that jurisdiction over all aspects of a *1252 sentence is lodged in only one court at a time could avoid a potentially problematic situation. On occasion, a subsequent restitution order could affect the propriety of a defendant’s initial judgment and sentence. See, e.g., 18 U.S.C. § 3572(b) (permitting the imposition of a fíne only to the extent that the defendant will still be able to pay restitution); 18 U.S.C. § 3582(a) (directing courts to consider the § 3553(a) factors, including the need for restitution, in deciding whether to impose a term of imprisonment); United States v. Kim, 364 F.3d 1235, 1238 (11th Cir.2004) (explaining that “extraordinary restitution, whether paid before or after adjudication of guilt, may, in the unusual case, support a departure from the guidelines”). If the district court retains power over the initial sentence, it could revise the initial sentence to account for the restitution award. If, however, we take jurisdiction over an initial judgment before restitution is entered, the district court may lose this power to appropriately revise its initial judgment to reflect the eventual restitution award.
Though not without support, these arguments are ultimately not persuasive. We concede that our holding may bring about piecemeal litigation resulting from bifurcated appeals, but avoiding that should not be our priority here, as Dolan and federal statutes explicitly contemplate and endorse bifurcation. Dolan articulates the “strong arguments favor[ing] the appealability of the initial judgment irrespective of the delay in determining the restitution amount.” 560 U.S. at 617, 130 S.Ct. at 2542. If the initial judgment is immediately appealed and restitution is later decided, 18 U.S.C. § 3664(o) clearly contemplates that the order of restitution can be separately appealed.
Further, piecemeal litigation is not likely even if we permit appeals from initial judgments before the district court has finalized restitution. Even if defendants are allowed to appeal from initial judgments, they will often choose to wait until all issues have been resolved so that the sentence can be appealed as a whole. Indeed, that is precisely what the defendants did in Dolan and Corey. And in the cases where the defendant chooses to appeal immediately, a final judgment ordering restitution will usually be entered by the district court before appeal from the initial judgment is heard. When that is the case, if either party wishes to appeal from the judgment ordering restitution, the appeals can be merged and litigation will not actually proceed in separate pieces. See Dolan, 560 U.S. at 618, 130 S.Ct. at 2542-43 (noting several eases where “the Court of Appeals has consolidated the two appeals and decided them together”). [11]
*1253 Moreover, the fact that a judgment leaving the issue of restitution unresolved is not “final” in every sense of the word does not permit us to ignore Supreme Court precedent indicating that a judgment sending a defendant to prison is sufficiently final to permit an appeal even if the district court’s job is not done. See, e.g., Corey, 375 U.S. at 173, 84 S.Ct. at 302. As discussed above, the Supreme Court has instructed us that we should not be insisting on that level of finality — and indeed, we need not insist on finality at all, see Cobbledick, 309 U.S. at 328, 60 S.Ct. at 542 — if the cost is indefinitely depriving imprisoned parties of their right to appeal.
Speaking of a word like “final” in terms of degrees may not be intellectually satisfying. But in a different context, the Supreme Court has admitted that its solution to a jurisdictional problem “may not be the most intellectually satisfying approach ..., but ... because law is an instrument of governance rather than a hymn to intellectual beauty, some consideration must be given to practicalities. In this case, the practicalities weigh heavily in favor of [exercising jurisdiction].” Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 836-37, 109 S.Ct. 2218, 2225, 104 L.Ed.2d 893 (1989) (citation and internal quotation marks omitted). Similarly, the practical advantage of ensuring that defendants are not forced to serve their entire sentences without having the right to appeal far outweighs the benefits of rigid insistence on total finality.[12]
Relatedly, the general rule that jurisdiction over a case should not be split between district and appellate courts is relaxed in cases where a defendant has been imprisoned — a point which both the Supreme Court and Congress have recognized. In certain situations where a district court can subsequently modify a sen *1254 tence — which implies that the court has the same power over the case that the district court arguably retains here — a judgment “that includes ... a sentence [to a term of imprisonment] constitutes a final judgment.” 18 U.S.C. § 3582(b) (emphasis added); see also Corey, 375 U.S. at 174-75, 84 S.Ct. at 302-03. Thus, even though simultaneous jurisdiction creates some negative consequences, those consequences are worth enduring to ensure that a meaningful right to appellate review is not eliminated or indefinitely delayed. See Cobbledick, 309 U.S. at 329, 60 S.Ct. at 543 (“Due regard for efficiency in litigation must not be carried so far as to deny all opportunity for ... appeal.... ”).
This authority also explains why we are not concerned that restitution may not be properly factored into every conceivable sentence. It is true that, in many cases, district courts will not know the precise amount of restitution until well after the defendant’s initial sentence is entered. As a result, a district court may wish to revise the defendant’s initial sentence after restitution is entered, but that may not be possible if we have assumed jurisdiction over that sentence. Thus, a case might arise where a subsequent order of restitution renders an initial sentence improper but impossible to change.[13] This is perhaps one of the consequences that must be endured to protect a meaningful right to review. And in any event, to the extent that this is potentially problematic, the Dissent’s approach is subject to the same criticism.
For example, consider a defendant who spends four years in prison, unable to appeal, before the district court finally enters a judgment ordering restitution. The district court may wish to revise the defendant’s sentence as a result of the order of restitution. If a substantial restitution award is entered, the court may wish to reduce the sentence to, for example, three years. But of course, since the defendant has already spent four years in prison, *1255 such a downward revision would be impossible. Thus, it appears that losing the ability to properly factor restitution into a defendant’s sentence in every conceivable case is an unavoidable consequence of Do-lan.[14] This example also shows why providing a meaningful right to appeal trumps this potential problem: to deny a defendant the right to appeal for four years in an effort to ensure that his sentence properly accounts for all conceivable factors offers little comfort to the defendant who learns, after his long-delayed appeal, that his conviction was improper and thus no sentence was merited in the first place. Though, in a rare case, it may be impossible to properly incorporate a subsequent order of restitution into a sentence, it would also be impossible to return to a wrongfully imprisoned defendant the years he spent behind bars without a right to review. The latter is a far greater evil.
Finally, our holding — which declares some judgments final for purposes of appeal even though they may be modified — has been endorsed by Congress in other contexts. Section 3582(b) states, “[n]otwithstanding the fact that a sentence to imprisonment can subsequently be ... modified,” “corrected,” or “appealed and modified,” “a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes.” 18 U.S.C. § 3582(b). Similarly, § 3664(o) states that a “sentence that imposes an order of restitution is a final judgment notwithstanding the fact that ... such a sentence can subsequently be ... corrected,” “appealed and modified,” “amended,” “adjusted,” “or ... the defendant may be resentenced.” 18 U.S.C. § 3664(o). These sections show that the prospect of subsequent modification in the district court does not preclude an initial judgment — particularly one sending someone to prison — from being final for purposes of appeal.[15]
Ultimately, the benefits of our holding significantly outweigh concerns on the other side. Indeed, the consequences of the Dissent’s position “might raise constitutional problems of significant proportions.” See Corey, 375 U.S. at 173, 84 S.Ct. at 302 (noting the potential for problems with a three-month delay of an appeal from a sentencing judgment that subjected a de *1256 fendant to a term of imprisonment). And even if these arguments were persuasive from a policy perspective, they would not permit us to ignore the precedent cited above which shows that the July Judgment, because it imposed a term of imprisonment, is final; nor would they allow us to ignore the fact that a judgment need not be final if insistence on finality would preclude appellate review.
V.
Allowing a defendant to appeal as soon as he begins serving a sentence of imprisonment ensures that he will have a right to appeal while that right still means something. Through a series of errors made below, nearly four years after Muzio was sentenced and imprisoned, an amended final judgment ordering restitution has not been entered. We refuse to allow delays in the district court (or the U.S. Attorney’s office) to deprive defendants like Muzio of the right to appeal for an indefinite period of time. In holding that district courts could order restitution more than ninety days after sentencing a defendant, the Court in Dolan was by no means suggesting, and in fact rejected in dicta, that defendants could now be deprived of their right to appeal indefinitely. The burden of the Court’s desire to ensure that victims receive restitution even when district courts fall behind was not intended to be borne by defendants already serving sentences that have not been subjected to appellate review.
Accordingly, we have jurisdiction to hear Muzio’s appeal from the district court’s July Judgment. Because Muzio’s claims on appeal lack merit, we affirm Muzio’s sentence and conviction, without commenting on the aspects of his sentence related to restitution.
AFFIRMED.

. Muzio first filed a pro se notice of appeal on July 7, 2010. On July 12, the assistant federal public defender assigned to Muzio’s case filed a notice of appeal, but that notice named the incorrect defendant and thus was filed in error. The assistant federal public defender filed a corrected notice of appeal on July 15.

. See, e.g., Catharine M. Goodwin, Federal Criminal Restitution § 9:23 (current through Aug. 2013) (noting that "an underlying issue in both Kapelushnik ... and Dolan is one of finality,” leaving open the question of whether "a sentence of imprisonment [is] final for appeal purposes where restitution has been delayed”).

. After assuming that the lack of a final order of restitution precludes us from exercising appellate jurisdiction over the other aspects of Muzio's sentence, the Dissent focuses on whether the November Order is final. To us, that is irrelevant, and thus we need not decide whether the November Order lacks the finality necessary to support an appeal. We would only need to determine that issue if Muzio were appealing from the court's imposition of restitution. Because he is not, the finality of the November Order is not at issue. Again, the question before us is whether the July Judgment is sufficiently final to support an appeal on its own, regardless of whether the November Order of restitution is final. In other words, we directly question — and ultimately reject — the Dissent’s assumption that the absence of an order of restitution precludes appellate courts from hearing appeals from initial sentencing judgments.

. This calls into question whether Kapelush-nik was correct even before Dolan was decided. Kapelushnik endorsed the exact ninety-day delay that the Supreme Court in Dolan implied was impermissible. The Court in Corey was even more explicit. Where a defendant was provisionally sentenced to prison for three to six months, the Court held that such a “commitment is clearly not lacking in sufficient finality to support an immediate appeal.” 375 U.S. at 173, 84 S.Ct. at 302 (internal quotation marks omitted). Other Supreme Court precedent, discussed in detail below, further calls Kapelushnik into doubt. It seems that any delay in a defendant’s right to appeal from a judgment resulting in imprisonment would run afoul of precedent holding that a sentence becomes final the moment punishment — even punishment less severe than prison — is imposed. See, e.g., Korematsu v. United States, 319 U.S. 432, 434, 63 S.Ct. 1124, 1125, 87 L.Ed. 1497 (1943) (explaining in a case where the defendant was only sentenced to probation that "certainly when discipline has been imposed, the defendant is entitled to review”). The ninety-day delay endorsed by Kapelushnik is thus highly suspect. After Dolan, that delay, which was once only ninety days long, is now indefinite. Kapelushnik surely cannot stand against the weight of this precedent.

. The Dissent points out that the right of a criminal defendant to appeal has never been recognized as a constitutional right. We did not author the words quoted above, however. The Supreme Court did. If the Court has suggested that significantly delaying a defendant’s right to appeal "might raise constitutional problems of significant proportions,” Corey, 375 U.S. at 173, 84 S.Ct. at 302, certainly we are free to make the same suggestion.

. From our holding that a defendant who is serving a term of imprisonment is entitled to appeal from the judgment imposing that prison term, the Dissent suggests we “implie[d] that a defendant who has not begun serving his sentence of imprisonment — because he has been admitted to bail pending sentencing — may not appeal until the issue of restitution has been resolved and a final judgment entered.” Dissenting Op. at 1276. That conclusion does not logically follow from our holding. We hold only that serving a term of imprisonment is sufficient to render a judgment final, not that it is necessary to do so. Judgments imposing lesser forms of discipline may also "be ‘freighted with sufficiently substantial indicia of finality to support an appeal.' " Dolan, 560 U.S. at 617, 130 S.Ct. at 2542 (quoting Corey, 375 U.S. at 174-75, 84 S.Ct. at 302-03). In Korematsu, the defendant was placed on probation and the imposition of his sentence was suspended entirely, yet this was sufficient to entitle the defendant to the right to review. Korematsu, 319 U.S. at 434, 63 S.Ct. at 1125. We need not hold today what the minimum threshold might be; we hold only that, whatever that threshold is, a defendant serving a 163 month prison sentence surpasses it.

. The Dissent notes that the July Judgment also stated that the court would later enter an amended final judgment, and it has not done so. But of course if any issue is left open, the court will necessarily have to issue an order or enter a judgment closing the issue. Thus, the fact that the court said it would enter an amended final judgment does not make the July Judgment any less final (or more provisional) than the judgment contemplated by Dolan. The question is not whether restitution is left open, however. The question is whether that matters for purposes of appealing from an initial judgment. And Dolan said that it does not.

. Even if we are wrong, and this appeal is not final, our holding that we have jurisdiction would still be supported by Supreme Court precedent. In Cobbledick, the Court recognized that the rule conditioning appellate jurisdiction on finality "has been departed from only when observance of it would practically defeat the right to any review at all.” 309 U.S. at 324-25, 60 S.Ct. at 541. In other words, when the rule that judgments are not appealable until final cannot be observed without undermining a defendant’s right to appeal — by, for example, indefinitely delaying that right — the former rule gives way to the latter right. Despite the Dissent’s attempts to distinguish Cobbledick factually, we rely on the case for its underlying, common-sense principle that people in prison have the right to appeal the judgments that put them there. The Dissent's view would “practically defeat the right to any review at all,” id., because, by the time the judgment against Muzio is final for purposes of appeal, Muzio's sentence might be over. That possibility, of course, is even more likely for defendants with shorter sentences than Muzio’s who would also be subject to indefinite delays in their right to appeal if we were to adopt the Dissent’s view.

. We are not unaware of the defects that occurred below with regard to determining the amount of restitution to be paid and the *1251 memorialization of that amount in the November Order. However, we do not have occasion to address those defects for two reasons. First, this is not an appeal from the November Order. This appeal was filed in July of 2010, months before that order issued. Second, we hold that when courts enter sentencing judgments ordering restitution but deferring determination of the amount, defendants have the option to either (a) timely appeal from the initial judgment (here, the July Judgment) and then, if desired, to timely appeal from the subsequent judgment finalizing the amount of restitution (here, the November Order may or may not qualify), or (b) timely appeal from the subsequent judgment only (here, again, the November Order may or may not qualify), in which case all issues will be heard in a single appeal. Muzio chose option (a) by filing an appeal within fourteen days of the July Judgment. He has not filed an appeal from the subsequent order of restitution, so it does not matter whether we would be able to hear an appeal from that order had he filed one. If and when he chooses to do so, we would then have to determine whether the November Order is sufficiently final to support an appeal.
The Dissent gives reasons to suspect that it is not. The Concurrence gives one reason to suspect that the Dissent’s analysis is flawed on that score. We add here that, based on the logic of this opinion, it may also matter whether the November Order is being enforced — that is, whether Muzio is actually being forced to pay restitution. See Korematsu, 319 U.S. at 434, 63 S.Ct. at 1125 ("[Cjertainly when discipline has been imposed, the defendant is entitled to review.”). If and when such an appeal is filed, we would also have to determine whether the appeal is timely. Under option (a), the initial appeal must be timely in relation to the initial judgment, and the subsequent appeal from the order of restitution must also be timely in relation to the judgment finalizing the amount of restitution. Under option (b), the appeal as to the conviction and sentence as a whole must be timely in relation to the judgment finalizing all issues.
By giving defendants the option to appeal in situations like this where discipline has been imposed, we do not mean to imply that they must appeal when discipline is imposed to avoid having their appeals time-barred. In a situation like this, for example, where the district court stated that it intended to enter an amended final judgment, if a defendant chooses not to file an appeal until the court enters that judgment, nothing in this holding should be read to suggest that his appeal would be time-barred. Nevertheless, defendants would be well-advised to heed the Concurrence’s observation that a court’s judgment does not lack finality simply because the court committed an error, such as depriving the defendant of his right to be present at a particular proceeding. A defendant's appeal may well be time-barred if he waits to file his appeal on the assumption that a court’s constitutional error renders its decision something less than final and, as a result, the applicable time limit lapses.

. We do not necessarily accept the Dissent’s assumption that the district court retains jurisdiction over a case simply because it has ongoing power to order restitution. In other *1252 words, exercising appellate jurisdiction over the July Judgment even if the district court retains the limited power to determine the amount of restitution may not violate the rule in Griggs. In Dolan, the Court recognized only that district courts retain "the power to take the action to which the [ninety-day statutory] deadline applies.” 560 U.S. at 611, 130 S.Ct. at 2538-39. The Supreme Court in no way implied that this power to order restitution somehow granted the district court continuing jurisdiction over the entire case. If anything, Dolan implied the opposite by suggesting that § 3664(d)(5) may not be related to jurisdiction at all. See id. Further, in discussing the powers retained by district courts as a result of its holding, the Supreme Court in Dolan never used the word jurisdiction, which was probably not accidental. But our opinion does not rest on the difference, if any, between jurisdiction over a case and power to order restitution. Based on Corey and Cobbledick, our view holds even if the Dissent is correct that district courts retain jurisdiction until restitution is resolved.

. The Dissent asks why this court would order the parties to brief and prosecute an "interlocutory” appeal. Dissenting Op. at 1281. To be perfectly clear, we would not. We would only expect defendants to brief and prosecute appeals from initial sentencing judgments — judgments imposing a sentence and ordering restitution but deferring determination of the amount — when the defendant chooses to appeal immediately. If he instead wants to wait until restitution is resolved, our opinion makes perfectly clear that he may do so. We do not believe, however, that he should be forced to wait in prison either for restitution to be ordered or for the district court to enter every form it says must be entered. The Dissent points out precisely why: if there is a good chance that a defendant’s conviction will be reversed, he will want to appeal his initial conviction and sentence as soon as possible so that he does not serve any more erroneously imposed prison time than necessary. And if he believes his conviction is likely to be reversed and his sentence vacated, he is not at all concerned with the prospect of a second appeal from the delayed order of restitution because that appeal will be mooted and the issue of restitution finally resolved the moment his conviction is vacated.

. In Newman-Green, the Court continued: "If the entire suit were dismissed, Newman-Green would simply refile in the District Court.... The case would then proceed to a preordained judgment.” 490 U.S. at 837, 109 S.Ct. at 2225. The same is true here, as our refusal to exercise appellate jurisdiction would result in a request that the district court enter an amended final judgment reflecting the preordained amount of restitution that has already been ordered. Then, Muzio would simply refile this appeal — or, his prematurely filed appeal would ripen — and we would reach the merits of his appeal which have already been briefed and argued before us. The Court reasoned that "Newman-Green should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity.” Id. Nor should Muzio.

. We do not mean to imply that we necessarily agree that it would be impossible for a district court to incorporate a subsequent order of restitution into an initial judgment simply because an appeal from that judgment has been filed. While it is typically true that the filing of an appeal divests district courts of jurisdiction over the matters contained in the appeal, see United States v. Tovar-Rico, 61 F.3d 1529, 1532 (11th Cir.1995), this is not the typical situation. For reasons discussed throughout, it is appropriate to allow defendants to bifurcate a deferred determination of the amount of restitution from all other aspects of their cases. This would mean that the district court retains the power to determine the amount of restitution even if an appeal from the initial judgment has been filed with us. Whether the district court’s retention of the power to determine the amount of restitution would also confer upon it the power to, as a result of this determination, alter the initial judgment from which an appeal has been filed is not a question before us. It seems that in many cases, when the district court enters an amended judgment reflecting the amount of restitution, it could also enter a judgment announcing how the order of restitution should impact the initial sentence. This amended judgment could be separately appealed to this court, and we would often be able to consolidate this appeal with the initial appeal, avoiding any potential problems. See Dolan, 560 U.S. at 618, 130 S.Ct. at 2542-43 (citing several cases where appellate courts consolidated appeals from a restitution order with a pending sentencing judgment). Even if we have already resolved the appeal, there is no reason that district courts could not amend their initial judgments to the extent necessary to properly incorporate restitution into the overall sentence. And, if asked to do so by either party, there is no reason why we could not amend our initial judgment to reflect the district court’s amendment. But, we must leave such considerations for another day.

. This problem will very rarely arise. When a court enters an initial judgment ordering restitution but deferring determination of the amount, the court will have a rough impression of how much restitution is likely to be ordered. And restitution should only affect a term of imprisonment in the "unusual case” in which an "extraordinary restitution” award is ordered. See 18 U.S.C. § 3582(a); Kim, 364 F.3d at 1238. It is likely that the court would know at the time of sentencing, even if the precise amount is not set, that an extraordinary award is probable, and thus courts could in the vast majority of cases factor the anticipated award into the defendant’s initial sentence. The universe of cases subject to these anomalies is narrowed even further because, as discussed above, a defendant could wait until restitution is entered before appealing thereby opting to avoid bifurcation. Finally, courts will rarely take so long to order restitution that we have resolved the defendant’s appeal from the initial judgment before the district court acts. For these reasons, though it is possible that bifurcating sentencing might make this problem slightly more common, this scenario is still highly improbable.

. Importantly, § 3664(o) also shows that adding an order of restitution to a judgment does not provide much in the sense of finality when one considers the number of ways in which a “final” judgment that includes restitution does not appear to be all that final. It would be odd to insist on the imposition of such an uncertain and decidedly not final aspect of a judgment before one is ready to declare that a judgment as a whole is final.